# Elyton Land Co. *v.* South & North Ala. Railroad Co.

## *Statutory Action in nature of Ejectment.*

95    631
98    409
95    631
117   408
119   122
119   126

1. *Railroad company's right of way; nature of title.*—Land acquired by a railroad company for its right-of-way, whether by condemnation proceedings or by purchase or grant from the owner, is its private property, though charged with a public use; and the public can not claim any interest in it, as in lands dedicated to the public use.

2. *Estoppel by chancery decree, and by deed.*—In 1871, the Elyton Land Company, owning the lands on which the prospective city of Birmingham was located. subject to the right-of-way which the Alabama & Chattanooga Railroad Company had secured through them,

[Elyton Land Co. v. South & North Ala. R. R. Co.]

and desiring to induce other companies to make their roads center there, entered into a contract with said A. & C. company and the South & North Alabama Railroad Company, whose road, as located, would run through or near said city; by which contract, said E. L. Company bargained, sold and conveyed to said two railroad companies a strip of land several hundred feet wide, and extending over 4,000 feet along each side of the right-of-way of said A. & C. road, for railroad purposes, on condition that they erect their depots, machine-shops, &c., in Birmingham, and that they give, grant and convey "to the first two railroad corporations constructing their roads from their terminus to said city" a part of said land, not exceeding one-fourth each, for the construction of their depots, &c.; and on the further condition that a certain portion of said tract, of designated size, "be appropriated and used forever as a general passenger depot for all railroads entering said city, with right-of-way to same; and with the further condition that a strip of the land, 35 feet wide, lying on each side of the right-of-way of the A. & C. company, "shall be held by the said party of the first part [E. L. Co.] forever as a perpetual right-of-way for all railroad companies doing business in and through said city." On the 30th April, 1872, the Elyton Land Company conveyed to the S. & N. Ala. Railroad Company, a strip of land for a right-of-way, but with a proviso, "that any other railroads running into or through the city of Birmingham shall have the right to run a parallel track along and upon the same right-of-way." In March, 1881, the Elyton Land Company filed its bill in equity against the S. & N. Ala. Railroad Company and the Ala. Great Southern Railroad Company, the latter being the successor of the A. & C. Railroad Company; alleging that the S. & N. Ala. company had partially, if not substantially, accepted the terms and conditions of said agreement of April, 1871, by the construction of its road, the erection of buildings, &c., and that the other railroad companies had failed to comply, and had thereby forfeited all rights under said agreement of April, 1871, which, as the complainant insisted, was revocable on that account; and therefore praying that all rights granted by said agreement to the other railroad companies be divested, but reserving the rights thereby granted to the S. & N. Ala. Railroad Company. Decrees *pro confesso* being duly entered against the two defendant corporations, a decree was rendered in accordance with the prayer of the bill, revoking, annulling and declaring void the said agreement of April, 1871, as to the A. & C. company, the A. G S. company, and all other railroad companies except the S. & N. Ala. company, whose rights were reserved and confirmed. Afterwards, the E. L. Company conveyed to the S. & N. Ala. R. R. Co., for railroad purposes, a part of said strip of lands in severalty, in satisfaction of the covenants of said agreement of April, 1871. *Held*, that the Elyton Land Company was estopped, as against the S. & N. Ala. Railroad Company, from insisting that the strip of land so conveyed to it was to be held as a right-of-way for all other railroad companies as well as for itself.

3. *Use of right-of-way by railroad company.*— Land which a railroad company has acquired for a right-of-way may, unless restrained by the terms of the grant, be appropriated to the erection of depots or other buildings necessary or proper for the transaction of its ordinary business.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. JAMES B. HEAD.
This action was brought by the Elyton Land Company,

a private corporation, against the South & North Alabama Railroad Company, to recover the possession of a tract or strip of land, which was thus described in the complaint: "A strip of land 35 feet wide, on the north side of and adjoining the line of the right-of-way of the Alabama Great Southern Railroad Company, as located and extended from the west side or line of section 29, township 17, range 2 west, to the north line of section 2, township 18, range 3 west." Issue was joined on the plea of not guilty, and a jury was waived. The court rendered judgment for the plaintiff, for all the land sued for, except a strip which is described in the bill of exceptions as the "land lying between the west line of Fourteenth street and the east line of Twenty-fourth street." The plaintiff excepted to this ruling, and here assigns it as error. The action was commenced on the 25th September, 1889.

The strip of land sued for is part of a large tract containing nearly 4,000 acres on which the city of Birmingham is situated, and which was conveyed to the Elyton Land Company by Josiah Morris and wife, by deed dated February 28, 1871. At that time, the Alabama & Chattanooga Railroad Company was constructing its road, and had acquired a right of way through the lands, fifty feet wide from the center of its track on each side, and extending diagonally from the North-east to the South-west through the whole tract; and the South & North Ala. Railroad Company was constructing its road between Montgomery and Decatur in such a direction that it would cross the track of the former company near or within the limits of Birmingham. On the 21st April, 1871, a written agreement was entered into between the Elyton Land Company as party of the first part, the Alabama & Chattanooga Railroad Company as party of the second part, and the South & North Ala. Railroad Company as party of the third part, as follows : "That for and in consideration of the payment of one dollar to the party of the first part by the parties of the second and third parts, the receipt whereof is hereby acknowledged, and for the further consideration of their doing and performing the presents as hereinafter stipulated and stated, the said party of the first part has bargained, sold and conveyed, and by these presents doth bargain, sell and convey unto the parties of the second and third parts, jointly and severally, the following described tracts or parcels of land, lying and being in the city of Birmingham," describing two strips, one on each side of the track of the A. & C. road, "forming two parallelograms, 415 feet wide and 4,780 feet long ; all for the

purposes and upon the conditions, that they build, construct and use thereon their depots, machine-shops and tracks, for the use of themselves, at said city of Birmingham; and upon the further condition, that they shall give, grant, sell and convey unto the two first railroad corporations constructing their roads through from their terminus to said city an equal and sufficient quantity of the above granted premises, not exceeding one-fourth each, for their depots, tracks and machine-shops and other railroad property; and upon the further condition, that a portion of said premises near the center of the track [tract?], not less than 415 by 900 feet, be appropriated and used forever as a general passenger depot for each and every railroad entering the city of Birmingham, with right-of-way to the same; and upon the further condition, that the party of the third part shall have the perpetual and full [free?] use of the right-of-way of the party of the second part, in a manner hereafter [to be] described by deed, and that the strip of 35 feet lying between the right-of-way of the party of the second part, on each side of said railroad, and the two parallelograms first above conveyed, shall be held by the party of the first part forever, as a perpetual right-of-way for all railroad companies doing business in and through the said city as aforesaid. It is further stipulated by all parties that the alternate streets crossing said above described railroad and premises shall only [always?] be kept open and unmolested. The party of the first part also agrees to make and deliver to each of the parties of the second and third parts the proper deed and conveyance to the portions of said premises as selected and agreed on between themselves."

On the 30th April, 1872, the Elyton Land Company conveyed by deed to the South & North Ala. Railroad Company, "for the right-of-way of their road forever," a strip of land "fifty feet wide on each side of the center line of their railroad as at present located and built, commencing at the southern limit of their land, and running northward to the right-of-way of the Alabama & Chattanooga Railroad Company near the crossing of said A. & C. railroad, and also from the right-of-way of said A. & C. railroad near the point where the South & North Ala. railroad diverges on the north from the said A. & C. railroad, to the northern limit of their said property;" but the deed contained a proviso, "that any other railroads running into or through the city of Birmingham shall have the

right to run a parallel track along and upon the same right-of-way."

On the 31st March, 1881, the Elyton Land Company filed its bill in equity against the Alabama Great Southern Railroad Company, as the successor of the Alabama & Chattanooga Railroad Company, and against the South & North Ala. Railroad Company; alleging that the sole consideration of said contract of April 21, 1871, on the part of complainant, was to induce said railroad companies to build their depots, &c., within reasonable time, at Birmingham; that the South & North Ala. Railroad Company had partially complied with the conditions specified in said contract, and was entitled to "an equitable portion of said lands, to-wit, one-twelfth part thereof, but the other corporations, having failed, are not entitled to any part thereof." Complainant claimed "the right to enter upon and resume possession and title to said body of lands, as against all of said railroad companies except the South & North Ala. Railroad Company to its equitable portion as aforesaid," and "that there has been a defeasance of title in consequence of such non-compliance as against all of said other railroad companies." The bill therefore prayed the court to "declare the title of said railroad companies, in and to the lands conveyed by said deed [contract], vacated and divested with the exception aforesaid, and, if they be entitled to an election to comply with such conditions, that they do so at once; and failing to comply, that the court declare their title vacated." An amendment of the bill was allowed, which alleged that the lands, when purchased by the Elyton Land Company, were subject to the right-of-way of the A. & C. Railroad Company; that said company, after its purchase, "granted 35 feet on each side of the right-of-way of said A. & C. Railroad Company, to be reserved property as a common right-of-way to companies which, within a reasonable time, might be doing business in and through said city of Birmingham; that the S. & N. Ala. Railroad Company, by agreement with the said A. & C. Railroad Company, ran its road on the north side, near to and parallel with the road of the said A. & C. Railroad Company, and on the right-of-way of said A. & C. company through said city of Birmingham; and that the South & North Ala. Railroad Company, by mistake, has built its machine-shops on said 35 feet reserved by said Elyton Land Company and granted as a common right-of-way for roadbeds for companies which might do business in and through said city on railway or beds.

Decrees *pro confesso* were entered against each one of the

defendant corporations, and a decree was afterwards rendered as follows: "It appears from the allegations of the bill, and the admissions of complainant in open court, that the South & North Ala. Railroad Company has substantially complied with the terms and conditions of the agreement of April 21st, 1871, and has agreed with the complainant on the boundaries of the lots or parcels of land to which said railroad company is entitled under said agreement, being part and parcel of the lands therein described; and as to the lands so designated and set apart to said South & North Ala. Railroad Company, and as to all other rights acquired by it for its own use under said agreement, said agreement remains unaffected by this decree. But it further appears from the bill, as taken confessed against the Ala. Great Southern Railroad Company, that the Alabama & Chattanooga Railroad Company and its successor, the said Ala. Gr. So. Railroad Company, have wholly failed to comply with the terms and conditions of said agreement of April, 1871, and have forfeited all rights and privileges under said agreement; and it further appearing that said agreement, in so far as it is intended for the use and benefit of railroad companies other than the said South & North Ala. and the Alabama & Chattanooga companies, is a voluntary trust, which the grantor, before acceptance, is entitled to revoke and annul; and it further appearing that no other railroad company has accepted the uses and benefits of said agreement, or claimed any benefit thereof within a reasonable time from the making thereof: It is therefore ordered, adjudged and decreed, that said agreement or conveyance of April 21st, 1871, be and is hereby revoked, annulled, and declared void and of no effect, as to said Alabama & Chattanooga Railroad Company and its successor, the said Ala. Great Southern Railroad Company, and as to all other railroad companies and all other persons, reserving, however, the rights of the South & North Ala. Railroad Company, for its own use, under said agreement, as hereinbefore declared. It is further ordered and decreed, that the said Elyton Land Company shall and does hold the lands described in the agreement, excepting and saving only so much thereof as has been set apart and designated to the South & North Ala. Railroad Company as hereinbefore declared, in all respects as if said agreement or conveyance had not been made; and any cloud upon the title of said Elyton Land Company created by said agreement or conveyance, upon the lands therein described, excepting and saving only the lands set apart to the South

& North Ala. Railroad Company as aforesaid, be and is
hereby removed."

Afterwards, by deed dated April 28th, 1882, the Elyton
Land Company conveyed to the South & North Ala. Railroad
Company, a strip of land thus described: "Beginning at a
point on 18th Street in the city of Birmingham, between
First Avenue North and the right-of-way of the Ala. Great
Southern Railroad Company, 35 feet from said right-of-way,
running North-east, at right angles with said right-of-way,
182.5 feet; thence South-west, parallel to said right-of-way,
900 feet; thence South-east, at right angles to said right-of-
way, 182.5 feet, along 18th Street to the point of beginning,
the whole forming a parallelogram 900 feet by 182.5 feet;
the same to be used as a general passenger depot by said
party of the first part for the convenient transaction of its
passenger business in said city of Birmingham, upon the
condition that any other railroad company now doing busi-
ness in Birmingham, or which may hereafter build its rail-
road to Birmingham, shall have access to and use of said
general passenger depot, upon equitable terms to be agreed
on between them and said South & North Ala. Railroad
Company." This deed recited the material facts above
stated, and that the South & North Ala. company accepted
the land conveyed by it, together with that conveyed by the
deed of April, 1872, in full satisfaction of all rights acquired
by it under the agreement of April, 1871.

The defendant erected its freight depot and other struc-
tures on the 35-foot of land described in the agreement of
April 21st, 1871, some of them being within the limits of
the strip afterwards conveyed to it in severalty, and the
others without. For the latter portion of the strip sued for
the court rendered judgment for the plaintiff, but refused to
render judgment for the residue; and this ruling is assigned
as error by the plaintiff.

ALEX. T. LONDON, for appellant, submitted a printed argu-
ment, in which he maintained the following propositions,
and cited the following authorities: (1.) Under the agree-
ment of April 21st, 1871, the South & North Ala. Railroad
Company acquired only an easement in the 35 foot strips in
common with all other railroad companies. This con-
struction of the agreement is apparent from its own terms,
considered in connection with the circumstances which gave
birth to it, as illustrating the objects and purposes of the
respective parties. The S. & N. Ala. company built its
freight depot on the strip with the consent of the Elyton

Land Company, and recognized the title of that company to it until the destruction of the depot by fire in 1884. (2.) The said agreement, in connection with the maps of the property, was a dedication of the strips for railroad purposes.—5 Amer. & Eng. Encyc. Law, title *Dedication;* 6 Hill, N. Y. 411; *Booræm v. North Hudson Railroad Co.,* 40 N. J. Eq. 557; 118 Ill. 61-70; 72 Cal. 170; 1 Hill, N. Y. 189-91; 19 Wend. 128; 64 N. Y. 65; *Bartlett v. Bangor,* 67 Me. 460. (3.) The dedication must be for public, as distinguished from private uses, but it may be limited to special uses of a public character.—Washburn on Easements, 203-5, 215-6; 41 N. J. Eq. 606; 2 Amer. & Eng. Encyc. Law, 416; *Beatty v. Kurtz,* 2 Peters, 566; *Antonez v. Eslava,* 9 Porter, 544; Elliott on Roads & Streets, 109; 7 B. & C. 257; 2 Stra. 1004; 11 East, 375; *Cincinnati v. White,* 6 Peters, 431; Angell on Highways, 146, 3d ed.; 2 Smith's L. C. 164-5. (4.) There may be a dedication of land for railway purposes, as for a right-of-way, or for a general depot; and such dedication is for a public use, as much as a landing for steamboats, or for a public wharf.—*New Orleans v. United States,* 10 Peters, 662; *Gardiner v. Tisdale,* 2 Wisc. 153; *Godfrey v. Alton,* 12 Ill. 29; *Bolt v. Stennett,* 8 T. R. 606; 7 Wall. 272; 27 Fed. Rep. 412; *Railway Co. v. Greeley,* 17 N. H. 47; 4 Ohio St. 308; 16 Ohio St. 330. (5.) The decree *pro confesso* in the chancery suit is a solemn admission by the South & North Ala. Railroad Company of the dedication of the strip in controversy as a common right-of-way for all railroads. The bill in that case did not attempt to affect that part of the land which the Elyton Land Company had agreed to hold as a common right-of-way for all railroads, and the decree *pro confesso* was an admission that these strips were held as a common right-of-way, and were subject to no conditions. The bill did not ask a rescission of the agreement as to these strips, and the decree to that effect was ineffectual.—54 Ala. 291; 57 Ala. 246; 69 Ala. 86. (6.) The deed of 1882 conveyed to the defendant no greater rights than were acquired under the agreement of 1871, and it was accepted in satisfaction of those rights. (7.) The erection of the defendant's depot on the strip in controversy is a *misuser* of it, which entitles the plaintiff to maintain ejectment.—*Perley v. Chandler,* 6 Mass. 454; *Ayres v. Penn. Railroad Co.,* 57 Amer. Rep. 538; 6 Amer. & E. Encyc. Law, 233; *Cooper v. Smith,* 9 S. & R. 26; *Bolling v. Mayor,* 3 Rand. 563; 39 Miss. 805; 1 Burr. 138; 2 Johns. 357; 15 Johns. 447; 104 Mass. 1; *Morgan v. Moore,* 3 Gray, 319; 67 Penn. St. 507; 50 N. Y. 646; 3 Wait's A. & D. 8.

HEWITT, WALKER & PORTER, *contra.*—(1.) The agreement of 21st April, 1871, conveyed to the defendant the right-of-way over and through said 35-foot strip of land.—Code, § 1831; *Jones v. Reese,* 65 Ala. 134; *Wilkinson v. May,* 69 Ala. 34; *Doe v. Ladd,* 77 Ala. 223; *Webb v. Crawford,* 77 Ala. 440. (2.) The complainant is estopped by the chancery decree and its subsequent deed to the defendant from asserting that any other railroad company has any right or interest in said strip of land. (3.) The erection of the defendant's depot on the land is not a *misuser* or misappriation of it, but was a legitimate use for railroad purposes. (4.) If the erection of the depot were a *misuser,* the plaintiff could not maintain ejectment on account of it, because it was not entitled to the possession.

WALKER, J.—The land involved in this suit is included in the description of the strips of land lying on either side of the right-of-way of the Alabama & Cattanooga Railroad Company, which, by the terms of the contract of April 21st, 1871, between the Elyton Land Company, the Alabama & Chattanooga Railroad Company, and the South & North Alabama Railroad Company, were to be held by the Elyton Land Company forever as a perpetual right-of-way for all railroad companies doing business in and through the city of Birmingham. That contract was before this court in the case of the *Alabama Great Southern R. R. Co. v. South & North Ala. Railroad Co.,* 84 Ala. 570, and the extent of the right conferred by its terms upon the South & North Alabama Railroad Company in the right-of-way of the Alabama & Chattanooga Railroad Company was there determined. In March, 1881, the Elyton Land Company filed its bill in chancery against the South & North Alabama Railroad Company and the Alabama Great Southern Railroad Company, alleging in substance the existence of the contract above referred to, the non-compliance by the Alabama Great Southern Railroad Company as the successor of the Alabama & Chattanooga Railroad Company with the conditions of said agreement to be performed by the former of these two companies, and the partial compliance by the South & North Railroad Company with the conditions to be performed by it under said contract, so as to entitle that company to a portion of the lands which it was to receive under the contract. The complainant in that bill sought thereby to have revoked and declared forfeited the benefits stipulated for by said agreement in favor of the Alabama Great Southern Railroad Company, and of all other railroad

companies, except the South & North Ala. Railroad Company. Decrees *pro confesso* were entered against both the defendants. A final decree was rendered in which it was recited that "it appears from the allegations of the bill and the admissions of complainant in open court that the South & North Alabama Railroad Company has complied substantially with the terms and conditions of the agreement of April 21st, 1871, and has agreed with the complainant on the boundaries of the lots or parcels of land to which the South & North Alabama Railroad Company is entitled under said agreement, being part and parcel of the lands therein described, and as to the lands so designated and set apart to the South & North Alabama Railroad Company, and as to all other rights acquired for its use, by said South & North Alabama Railroad Company under said agreement, the said agreement remains unaffected by this decree." It was decreed that said agreement be revoked, annulled and declared void and of no effect as to the Alabama & Chattanooga Railroad Company and its successor, the Alabama Great Southern Railroad Company, and as to all other railroad companies and all other persons; but the decree expressly reserved the right of the South & North Alabama Railroad Company for its own use under said agreement. The conclusive effect of this decree upon the rights of the Alabama Great Southern Railroad Company was fully recognized in the case above cited. The result of the decree was to exclude all claim by that company upon any lands of the Elyton Land Company covered by the terms of the contract in question, and to leave the interest of the South & North Alabama Railroad Company in the strip of land involved in this suit undiminished, and, indeed, augmented, certainly to the extent of the exclusion of the Alabama Great Southern Railroad Company from participation in the benefits of the contract. The decree just referred to was followed by a deed, executed in April, 1882, whereby the Elyton Land Company conveyed to the South & North Alabama Railroad Company certain lands which were accepted by the latter company as the residue of the lands to which it was entitled under the contract of April 21st, 1871. It was again recited in this deed that the Elyton Land Company claimed that the Alabama & Chattanooga Railroad Company and all other railroad companies except the South & North Alabama Railroad Company had failed to comply with the terms and conditions of said original contract or agreement, and that said agreement was revoked and annulled as to all other companies or persons ex-

cept the South & North Alabama Railroad Company. It was expressly stipulated in that deed that the right of the grantee therein, acquired by said original agreement, to the strip of land thirty-five feet wide, a portion of which is involved in this suit, should remain in full force and effect, but that the right-of-way over said strip was abrogated as to all other railroad companies.

It is contended for the appellant that the agreement of April 21st, 1871, together with the maps of its property made and published at that time, effected a dedication of the strips of land, a portion of which is involved in this suit, for the purposes stated in the agreement, and that this dedication was irrevocable, and could not be affected by the decree and the deed of 1882 above referred to. It is further contended that the erection of the depot on the strip in controversy is a misuser and a diversion of it from the purposes to which it was devoted by the dedication, which entitles the plaintiff to maintain ejectment for the recovery of the property. The consideration that railroads are devoted to public uses affords the justification for the exercise of the power of eminent domain for the acquisition of private property for railroad purposes. But the land held by a railroad company for the purposes of its enterprise, whether acquired by condemnation proceedings or by purchase from the owners, is, so far as the right of property is concerned, private property. The incidents of private ownership attach to it. The title is in no manner vested in the public, or in any part of the public as such. The title of the railroad company is as exclusive as that of any sole grantee in a conveyance of land. It must use the property for the public purposes for which it was acquired under public authority. Though the property must be so used, still the ownership is private, and the public do not share in such ownership. The public are entitled to use the property, but they use it as the property of the company, and the company is entitled to compensation for such use. The law secures to the company the exclusive possession and dominion of the property, and only requires that it be devoted to the purposes of public use and convenience to subserve which its acquisition was authorized. Land set apart for a railroad right-of-way, if accepted by the railroad company, is taken as the company's private property and for its individual profit, though such company by taking the property charges itself with a public duty as to the use to which the property is to be devoted. The acceptance by the company is in its own behalf, and can not properly be

said to be in behalf of the public. A dedication is "an appropriation of land to some public use made by the owner of the fee, and accepted for such use by or on behalf of the public." The public is treated as the grantee, and the gift enures immediately to the public.—5 Am. & Eng. Ency. of Law, 395, 399 ; *Steele v. Sullivan*, 70 Ala. 589. Dedication is not a mode of conferring a private property right in land. The only cases, not controlled by special statutory provisions on the subject, in which we have found the donation of land for railroad purposes spoken of as a dedication involved only the assertion of a claim to the property in question by the railroad company itself ; and in such cases the claim was either disallowed, or was rested, not upon a common-law dedication, but upon an adverse possession by the railroad company, or upon a state of facts raising an estoppel *en pais* against the holder of the legal title which would have precluded him from asserting his title against any one who had occupied and improved the land with his knowledge and consent under similar circumstances.—*Morgan v. Railroad Company*, 96 U. S. 716 ; *Texas & New Orleans Railway Co. v. Sutor*, 56 Texas, 496 ; 11 Am. & Eng. R. R. Cases, 506 ; *Daniels v. Chicago & N. W. R. Co.*, 35 Iowa, 130 ; *Forney v. Calhoun Co.*, 86 Ala. 463. It seems that when the act to be relied upon as the acceptance of a proposed appropriation of property is to be done, not by the public, or in behalf of the public, but by an individual or by a private corporation, intending to take the property in its own behalf for use in a business enterprise to be prosecuted for its own profit, and the property is to be acquired as private property and for private gain, so that the public are not to share in the ownership or in the benefits of ownership, but the new private proprietor, by taking the property for the purposes in view, only charges itself with the duty of using the property for public purposes on receiving compensation for such use; then such appropriation of the property, to be binding upon the holder of the legal title, must be effected by his contract, grant or conveyance, unless he has precluded himself from asserting his title as the result of a state of facts which would have a like effect against him in favor of a purely private party ; and that it does not follow that such an appropriation is effected because the act of the proprietor would have amounted to a common-law dedication if the gift had enured immediately to the public, and a private ownership for private profit had not intervened. It seems that a railroad company can not hold its road, rights of way, depot grounds or

other property against the former proprietor thereof, unless
its alleged interest therein has been secured to it in one of
the modes provided by law for the vesting of private
property rights in private parties.    In the cases found by
us in which the claim of a railroad company to such
property has been rested solely upon a state of facts which
would have amounted to a dedication if the appropriation
had been for a public use, such claim has not been allowed ;
and the rejection thereof has been put upon the ground
that such an interest in property could not be conferred
upon a private party by what is known to the law as a dedi-
cation.— *Watson v. Chicago & St. Paul R. Co.*, 46 Am. & Eng.
R. Cases, 543, a decision by the Supreme Court of Minne-
sota ; *Todd v. Pittsburg, St. W. & C. R. Co.*, 19 Ohio St. 514.

But, even if it be conceded that the contract of April 21st,
1871, if standing alone, should be given effect as an irrevo-
cable dedication of the property in question as a perpetual
right-of-way for all raidroad companies doing business in
and through the city of Birmingham, and that other railroad
companies could claim the benefit of that dedication and
would be entitled to prevent the appellee from appropria-
ting the property to a purpose inconsistent with its use as a
common right-of-way; yet the Elyton Land Company is not
now in a position to assert such claim against the South
& North Alabama Railroad Company.    In the first place,
it plainly appears that the appellant obtained the decree on
the bill in chancery above referred to by representing that
the appropriation of lands, including that involved in this
suit, which was provided for by the contract of April 21st,
1871, was conditional and revocable, and the adjudication
that such was the effect of that contract was necessarily in-
volved in the decree then made.    Furthermore, the deed of
April 28th, 1882, was, in effect, a final settlement and adjust-
ment between the parties to this suit of their respective
rights under the contract of April 21st, 1871.    It plainly
appears from the recitals contained in that deed that the
appellant thereby formally admitted that the claims of all
other railroad companies to participate in the use of the
strip of land, a portion of which is involved in this suit,
had been duly and rightfully abrogated ; and that the ap-
pellees' right to the exclusive use of that land for the pur-
pose to which it was devoted by the original contract was
fully recognized.    The recital in that deed of the reservation
of the appellee's right in said strip, and the forfeiture of the
claims of all other railroad companies thereto, was a par-
ticular recital of material facts which entered into the con-

sideration moving to the appellee for the covenant and releases then made by it. The appellant having obtained the decree above referred to by representing the instrument upon which it now relies as having an operation wholly different from that now sought to be imputed to it, and having, in its subsequent deed, solemnly admitted as a material fact that the appellee alone is entitled to use the land in dispute as a right-of-way, is now estopped from setting up a claim inconsistent with such a representation and admission. The proceedings in the chancery cause and the recitals in the deed referred to show solemn admissions by the appellant that the land in dispute was not irrevocably dedicated, as is now claimed, and the appellant is bound by those admissions, certainly so far as concerns its present claim against the appellee.—*Pratt v. Nixon,* 91 Ala. 192; *Jones v. Morris,* 61 Ala. 518; *Tait v. Frow,* 8 Ala. 543; *Brown v. Hamil,* 76 Ala. 506; *Caldwell v. Smith,* 77 Ala. 157; *Hill v. Huckabee,* 70 Ala. 183, Bigelow on Estoppel (5th Ed.) 366 *et seq*; 7 Am. & Eng. Ency. of Law, 7.

The extent of the interest acquired by the appellee in the land in dispute is to use it as a right-of-way. The appellant has not deprived itself of the right to confine the appellee to this particular use of the property, though it can no longer claim that other railroad companies are entitled to share in such use. The claim now made is that the erection of a freight depot and other structures on the strip is a diversion of the property from the purpose to which it was appropriated. In the interpretation of an agreement regard is to be had to the situation of the contracting parties at the time it was made, the occasion which gave rise to it, and the obvious design intended to be accomplished.—*Tennessee & Coosa R. Co. v. East Ala. Railway Co.,* 73 Ala. 444. For reasons already stated, the appellant can not now deny that the appropriation of the property for the particular use mentioned was conditional, and that the right to participate in the use was forfeitable by any railroad company which should fail within a reasonable time to comply with the conditions imposed. According this meaning to the contract, and it is plain that the contingency of only one railroad company becoming entitled to the benefits offered by the contract was within the purview of its terms. The appellant has admitted by its deed that such contingency has happened, that all other railroad companies other than the appellee have forfeited all claims under the contract to the use of the strip in dispute, and that the right to use it for the stipulated purpose is vested in the appellee alone.

The parties are to be treated as having contemplated the possibility of the appellee acquiring the exclusive use of the strip as a right-of-way for its railroad alone.

It is to be observed that another provision of the same contract secured to the appellee the perpetual and free use of the right-of-way, one hundred feet wide, of the Alabama & Chattanooga Railroad Company (*Ala. Gt. Southern R. Co. v. South & North Ala. R. Co.*, 84 Ala. 570), so that the result of the appellee's compliance with the terms of the contract was to secure to it one right-of-way to be enjoyed by it in common with one or more other railroad companies, and also an exclusive right of way in another strip. In view of the fact that the use of the right-of-way of the Alabama & Chattanooga Railroad Company was secured to the appellee, the question to be determined is, did the appellant in stipulating for an additional right-of-way, which might become vested in the appellee exclusively, intend, in the event of such right so becoming exclusive, that the strip so appropriated should not be occupied by depots or other buildings adapted to railroad purposes, but should remain open so that tracks could be run over it. Such a meaning can not be imputed to the contract unless a railroad right-of-way is an interest of such limited scope that the land included therein must be devoted by the railroad company exclusively to a tract or tracts over which trains may pass. It is a matter of common knowledge that the railroad business involves the use, not only of cars and tracks, but of buildings and structures of various kinds. It was contemplated that the strip of land in dispute in this case should be used as a right-of-way in a city. The place was expected to be the scene for the transaction of many phases of the business different from but incident to the mere act of carrying persons or things. It was to be the place for receiving, delivering, storing and transhipping freight. In such places it is frequently necessary for the convenient transaction of a railroad business to have platforms, warehouses, lumber-yards, elevators, cattle-pens, engine-houses, car-sheds, depots, repair-shops, and other like facilities contiguous to the tracks. The space which is commonly called the railroad right-of-way is, in populous localities, generally found dotted with structures, other than the tracks, which are necessary or convenient for the transaction of the business of a common carrier; and we think that the erection of such structures is to be regarded as within the contemplation of the parties to a contract which stipulates for the use of land in such a locality as a railroad right-of-way, unless the

contrary appears from the terms of the contract. Ordinarily, the right-of-way of a railroad company is its exclusive property, and the company is entitled to its free and unobstructed use.—*Memphis & Charleston R. Co. v. Womack,* 84 Ala. 149. The company is entitled to an absolute and exclusive possession, so far as to secure fully every purpose for which the railroad is made and used.—*Tenn. & Coosa R. Co. v. East Ala. Railway Co.,* 75 Ala. 524. The question is, what are the uses to which the right-of-way may be devoted.

The Western Railroad Corporation was authorized by its charter to lay out its road, not exceeding five rods wide, through the whole length, and to acquire such strip by condemnation proceedings. In reference to the rights of the company within this area, Shaw, C. J., delivering the opinion of the Supreme Court of Massachusetts, said : "To the extent of five rods, it appears to us the legislature intended that the franchise of this corporation should extend, for any and all purposes incident to the object of its creation. It was contended in argument, that their franchise for public purposes extended only to the use of this strip of land as a way, and that if they had occasion for buildings and storehouses, as incident to their operations as carriers of persons and merchandise, they were to be regarded in their latter capacity as carrying on a distinct business, for their own profit, and therefore that such buildings were not to come under the same franchise. But no such limitation is contained in the act of incorporation, and none such results from the nature of its provisions. The establishment of the rail track, and the maintenance of engines and cars, for the transportation of persons and goods, are all combined together, as one public object to be attained, and the privileges incident to the one are incident to the other. No doubt, in practice, the main use of the strip of land of five rods in width, in the greater part of its extent, will be for sustaining the track for the trains to pass over. But such restriction of its use is not found in the act; and therefore, when the corporation have occasion to use any part of such strip of five rods for any of the purposes incident to their creation, it is within their franchise." And, under the law of that State exempting public works from taxation, it was decided in that case, "that this railroad corporation are not liable to taxation, for the land of the width of five rods, located for the road, nor for any buildings or structures erected thereon, so that they be reasonably incident to the support of the railroad, or to its proper or convenient use

for the carriage of passengers and the transportation of commodities; and that this includes engine and car houses, depots for the accommodation of passengers, and warehouses for the convenient reception, preservation and delivery of merchandise, and all goods and articles carried on the road." *Inhabitants of Worcester v. Western R. Corporation,* 4 Met. 564. That court has, in later cases, continued to recognize the right of a railroad company to occupy with buildings or other structures the land acquired for its railroad, so long as the mode of occupation is necessary or proper for the convenient exercise of the privileges and the performance of the functions defined by its charter.—*Proprietors of Locks & Canals v. Nashua & Lowell R. Co.,* 104 Mass. 1; *Boston Gas Light Co. v. Old Colony & Newport Railway Co.,* 14 Allen, 444; *Brainard v. Clapp,* 10 Cushing, 6; *Pierce v. Boston & Lowell R. Co.,* 141 Mass. 481.

In *Illinois Central R. Co. v. Wathen,* 17 Bradw. (Ill. App.) 582, it was held that on land granted for "railroand and depot purposes" the company could permit the erection and use by private parties, without the payment of rent, of elevators, corn-cribs, lumber-yards and lime-houses, which facilitated the business of the company in the receipt, transportation and discharge of freight. In *Western Union Telegraph Co. v. Rich,* 19 Kansas, 517, it was held that a railroad company may, for its own use in operating its road, construct a telegraph line over and along its right-of-way, and that by such use of the property it did not subject itself to an additional claim of the original land-owner for compensation. The opinion of the court was delivered by Judge Brewer, now an associate justice of the Supreme Court of the United States. In the course of the opinion it was said: "In short, the railroad company may use its right-of-way, not merely for its track, but for any other building or erection which reasonably tends to facilitate its business of transporting freight and passengers, and by such use in no manner transcends the purposes and extent of the easement, or exposes itself to any claim for additional damages to the original land-owner."

The authorities support the conclusion that a railroad company may make any use of the land acquired by it for use as the right-of-way for its railroad, which, directly or indirectly, contributes to the safe, economical and efficient operation of the road, and which does not interfere with the rights of property pertaining to the adjacent lands.—Lewis on Eminent Domain, §§ 584, 588, and cases there cited; *Gudger v. Richmond & D. R. Co.,* 43 Amer. & Eng. R. Cas.

606; *Railroad v. Deal*, 90 N. C. 110. The land here in dispute must be treated for the purposes of this case as secured to the appellee alone as an additional right-of-way in the heart of a city. The depot and other structures erected thereon afford such conveniences and facilities as a railroad company may be expected to provide for the transaction of its business in such locality. The land is used for the purposes incidental and auxiliary to the transportation business authorized to be conducted on and over it; and, as the appellant can not complain of the exclusive character of the occupancy, the uses shown do not, in our opinion, constitute a diversion of the property from the purposes to which it has been devoted. The conclusion is that the evidence does not support the claim that there has been a *misuser* by the appellee of the right-of-way in question.

The right to maintain the action is based upon the alleged *misuser*. It is not intended to be admitted that, if such *misuser* had been shown, the appellant would be entitled to a judgment in the statutory action in the nature of ejectment for land of which it could not hold possession, because, according to its claim, the appellee and other railroad companies were entitled to possess it and use it as a right-of-way.—*Cincinnati v. White*, 6 Peters, 431; 3 Brick. Digest, 324, § 27.

Affirmed.