# South & North Ala. R. R. Co. *v.* Highland Av. & Belt R. R. Co.

*Bill in Equity to Enforce Specific Performance of Contract, and Injunction.*

1. *Enforcement of contracts not securing equal benefits.*—Where a bill is filed by one party to an agreement to enforce specific performance by the other, and which is defended on the ground that the contract is not just and equitable in all its parts, it would be hazardous for the court, where the contract furnishes no standard or measure, to attempt a solution of these relative advantages which might, and probably would, vary with changing time.

2. *The more reasonable rule.*—On this subject this court quotes, with approval, Waterman on Specific Performance, §. 179, which declares the modern and more reasonable rule, that while inadequacy of consideration may be a ground of defense, as a general rule, the parties should be the sole judges of the value of the benefits to be derived from these bargains.

3. *Same; want of mutuality may be waived; suit at bar.*—While in an action on a contract which is originally binding on the one and not on the other, the latter may waive that want of mutuality, the case at bar is not of that class, but is a contract where each party is bound to grant to the other a use or easement in what had been the exclusive property of the other.

4. *When chancery will not decree specific performance.*—Where a contract sought to be specifically enforced contemplates that the engagements therein are to extend through a series of years, or, imply the performance of personal services exercised with special skill, judgment and discretion, the Chancery Court can not grant the relief prayed, but will leave the parties to their action at law for damages.

5. *Same; alternate stipulation giving chancery jurisdiction.*—Where the parties further stipulate that upon the failure of the one party to perform the promised service, the other party could do so at the expense of the defaulting party, this would entail a money liability upon each recurring default that could be determined by a decree defining the rights, duties and liabilities of the parties, without the duty of the Chancery Court retaining the cause for continuous administration.

6. *Remedy for disturbance of right of way.*—Where a right of way is disturbed or withheld, damages may be recovered in an action at

Vol. 98.

[South & North Ala. R. R. Co. v. Highland Av. & Belt R. R. Co.]

law. Where easements or servitudes are annexed to private estates,
the due enjoyment of them will be protected by injunction, as well
as by action at law for damages.

APPEAL from Jefferson Chancery Court.

Heard before the Hon. THOMAS COBBS.

The opinion of this court sets out fully the facts consid-
ered and passed upon in this cause.

HEWITT, WALKER & PORTER, and J. M. FALKNER, for ap-
pellant.—1. Appellant's demurrer to appellee's bill should
have been sustained, because the contract therein sought to
be enforced was without consideration, as appears on its
face.—*McBryde v. Sayre,* 86 Ala. 458; Pomeroy's Eq. Juris.,
vol. 3, § 1405; Waterman on Specific Performance, §§ 158,
186; *Dodd v. Seymour,* 21 Conn. 475; 31 N. J. Eq. 159; 21
N. J. Eq. 415; 39 N. J. Eq. 563; 21 Ala. 371; *Moon's Adm'r
v. Crowder,* 72 Ala. 79; *Irwin v. Bailey,* 72 Ala. 467; *Derrick
v. Monette,* 73 Ala. 75. 2. That the specific performance of
said contract would be detrimental to public convenience
and safety.—*Texas & Pacific R'y Co. v. Marshall,* 136 U. S.
405; *Windham v. Cotton Mf'g Co.,* 23 Conn. 384; 9 Chan.
Ap. Cases, 335; 120 N. Y. 29. 3. That said contract pro-
vides for the performance of acts continuous in their nature,
and which would require the constant interposition of a
court of equity. *Iron Age Pub. Co. v. Western Un. Tel. Co.,*
83 Ala. 498; Waterman on Specific Performance, § 49;
*Marble Co. v. Ripley,* 10 Wal. 339; 31 Mich. 43; 32 Ga. 550;
13 Ohio St. 544; L. R. 9 Ch. 331; 30 N. J. Eq. 12; 26 Ind.
50; L. R. 9 Eq. 538; 2 Tenn. Ch. 773; 33 Iowa, 422; L. R.
1 Ch. 117; 33 Mich. 331; 11 Fed. Rep. 625. In cases of un-
certainty or vagueness as to the subject-matter, or where
the terms of the contract are left incomplete, the court will
decline to enforce specific performance.—83 Ala., *supra;
Derrick v. Monette,* 73 Ala. 75; 31 Mich. 43; 32 Ga. 550; 21
Cal. 403; 58 Ala. 242; 27 Beav. 175; 30 Beav. 371; Appeal
of Ballou, 19 Atl. Rep. 304; 10 N. Y. S. 852; 29 Pac. Rep.
515. 4. That the appellee had an adequate remedy at law.
Compensation in damages, if any damages have been suf-
fered by the failure to keep such contract, is manifestly ade-
quate where the appellee could derive no use from the right
sought to be enforced, if it were specifically enforced.
5. That there is want of mutuality of remedy.—83 Ala. 498;
72 Ala. 79; 72 Ala. 467; 21 Cal. 404; 10 Wal. 359; Pomeroy
on Contract, §§ 162-5; Fry on Specific Performances, 286;
Pom. Eq. Juris., § 1405; Waterman on Specific Performance,

26-98.

§ 390; 30 N. Y. Rep. 374; 16 Atl. Rep. 4; 33 Iowa, 423, citing many cases on subordinate points. 6. That the bill, as amended, shows that the right of way, over which the right to lay the track was granted to the Elyton Land Company, was acquired by appellant charged with an easement, and that the contract was made in violation thereof.—*Joy v. St. Louis*, 138 U. S. 1; 11 Gray, 359, 364; 6 Allen, 341–4; L. R. 8 Ch. 96; 50 Ill. 216; 11 Gill & I. 149. (*a*) Courts of equity do not decree specific performance of conditions subsequent. The amended bill avers that the clause in the deed is a condition, and this averment is conclusive on the appellees.— *Woodruff v. Woodruff*, 16 Atl. Rep., p. 6; *Woodruff v. Water Power Co.*, 10 N. J. Eq. 489; *Iron Co. v. Erie*, 41 Pa. St. 341. (*b*) If construed as a covenant, the clause in the deed is not enforceable, as the parties for whose benefit it is intended to operate are not designated, and is void for that reason; if construed as a condition, it is void because repugnant to the grant contained in the deed.—Leading Cases in Am. Law Real Estate, vol. 1, 124; *Lord Cromwell's Case*; 2 Coke, 72 *a*; 3 Leonard, 16; *Choppin v. Harris*, 90 Mass. 594.

ALEX. T. LONDON, for appellee.—1. The complainant has only an equitable title to an easement. The jurisdiction of equity to restrain infringements of the rights of a party possessing an easement cannot be denied.—Washburne on Easements, 747; 1 High on Injunctions, § 848; *Lyde v. Hadley*, 36 Ala. 627. 2. Inadequacy of consideration alone, is no ground for refusing specific performance of an agreement.—*Bloodlett v. Hansell*, 66 Ala. 157; *Neill v. Neill*, 9 Wallace, 1; 5 Wait's Ac. & Def. 786–7. 3. In reply to appellant's contention that equity should decline specific performance because of *the want of mutuality*, appellee cites, 83 Ala. 498, pointing out the distinction between that case and the case at bar; and, cites in favor of appellee's insistance, 2 Addison on Contracts, 8 Ed. pp. 698, 1122; *Wilson v. Hartlepool Harbor R'wy Co.*, 34 L. J. Ch., 241; 2 De. G. J. & S., 475; 2 Chitty on Contracts, §§ 1428–9; *Lytton v. G. N. R'wy Co.*, 2 K. & J. 394; *Sanderson v. Cockermouth R'wy*, 11 Beav. 497; *Joy v. St. Louis*, 130 U. S. 1, 46–7–8 & 9; 47 Fed. Rep. 23; 1 Reed on Stat. of Frauds, § 363.

STONE, C. J.—In this opinion we will abbreviate the names, and designate the parties as the South & North Co., and the Highland & Belt Co. Each is an incorporated Railroad Company, in active operation and the bill in this case

[South & North Ala. R. R. Co. v. Highland Av. & Belt R. R. Co.]

was filed by the latter—the appellee—to compel the specific performance of an agreement entered into in the year 1887. The Elyton Land Company made the contract with the South & North Company, but subsequently sold out its railroad enterprise and interest in the contract to The Highland Avenue and Belt Railroad Company, which instituted this suit in November, 1889. The case comes before us on appeal from a decretal order of the chancellor, overruling a demurrer to the bill as amended. The pleadings do not question the making of the contract, nor does the South & North Company deny that it has failed to keep its contract. The defense it seeks to make is, that the contract is not such an one as that chancery will enforce its specific performance, for two reasons : first, that it is not mutual, in that sense which equitably justifies its specific enforcement, and, second, that its obligations are of such a character that chancery can not compel their performance.

The track of the South & North Co. extends entirely through the City of Birmingham, its general bearing being from south to north, but making considerable curves and deflections. The right-of-way is wide, with its main track near the centre thereof. In laying out the city a broad avenue was left for railroad tracks, with a bearing from east, north-east, to west south-west. In this avenue is the common passenger depot, and along it the South & North Co., as well as other railroads have their main tracks. The South & North Co. enters this avenue at thirteenth street and leaves it about Twenty-sixth street. Along the right of way of the South & North Co., bounding it on the north-west, The Highland & Belt Co. owns a strip of land thirty-five feet wide, which commences about Twenty-fourth street, and extends westwardly, bordering the right-of-way of the South & North Co., to or beyond Eighteenth street, which is beyond the passenger depot. But the Highland & Belt Co. owns no land, or strip of land, extending eastward beyond Twenty-fourth street.

A map and sub-maps appear to have been made exhibits to the bill, and many references are made to them, and to marks upon them. These are not furnished with the transcript before us. True we have a map of the plan of the city, but it is without very many of the marks mentioned in the bill, and it is, therefore, in some respects unintelligible to us. But, as we understand the real contention in this case, it may be thus stated : The Highland & Belt Co. has constructed its track, coming southwardly, until it has reached the right-of-way of the South & North Co. at or

near Twenty-ninth street, and claims the right to continue the construction of its track along and over the right-of-way of the South & North Co., until it reaches and connects with its own thirty-five feet strip, at or near Twenty-fourth street. This, as it appears, for the purpose of reaching the passenger depot from that direction. The South & North Co. refuses to permit it to thus lay its track on its right-of-way.

The part of the agreement of 1887 which this bill seeks to have specifically enforced, in what it severally requires of the two corporations, so far as it bears on the question we have stated, may be thus summarized: The South & North Co. granted to the Highland & Belt Co. the right to extend its track from a point near Twenty-ninth street across, South & North Co.'s switch leading to Baxter Stove Works, along said right-of-way six and one-half feet distant from, east of, and parallel to the westwardly line of said right-of-way, to a point about 300 feet east of the east line of Twenty-fourth street, (the beginning of Highland & Belt Co.'s strip) to be located on the South & North Co.'s right-of-way, not exceeding 2,400 feet in length. The crossing of the switch leading to Baxter Stove Works, to be put in and maintained at the cost and expense of Highland & Belt Co. The South & North Co. to have the right to cross the tracks to be constructed on its said right-of-way wherever and whenever it may desire to build sidings to any manufacturing establishment, warehouse, or other industrial enterprise—the cost of putting in and maintaining the crossing of such sidings with the track of the Highland & Belt Co. to be borne by the latter company. The contract further provided that the South & North Company should have the right to cross said track of the Highland & Belt Co. when necessary for convenient ingress and egress to and from said sidings that may hereafter be constructed by the South & North Co. to manufacturing establishments, warehouses, or other industrial enterprises. It was provided that all crossings that might be made should be constructed and maintained at the cost of the Highland & Belt Co. The South & North Co. was guaranteed preferential rights over the Highland & Belt Co. at all the crossings to be constructed.

In consideration of these grants and concessions, the Highland & Belt Co. agreed and stipulated that the several crossings above provided for and to be constructed should be constructed and maintained by it, at its exclusive cost, under the superintendence and to the satisfaction of the South & North Co., which was to be the judge of when and where crossings shall need renewals and repairs. And the

Highland & Belt Co. agreed that the renewals or repairs would be made promptly; and if they failed to make them within thirty days from the time of notification from the South & North Co., then the latter company should have the right to make them at the expense of the Highland & Belt Co. And the Highland & Belt Co. granted to the South & North Co. the right and privilege to cross its right-of-way, and all tracks that were then constructed, or might thereafter be constructed thereon, south or west of Twenty-fourth street, whenever it might become necessary for the South & North Co. to construct switches to gain access to manufacturing establishments, warehouses, or other industrial enterprises, that then were, or might thereafter be, constructed on adjacent property.

It is contended for appellant that this contract is not just and equitable in all its parts, and, that, therefore, the Chancery Court should not compel its specific performance, but should leave the Highland & Belt Co. to its action at law, for the recovery of damages for the breach of the contract by the South & North Company.

It may be that the contract does not secure precisely equal benefits to the two corporations. It may be that the concessions made to the Highland & Belt Co. are more valuable when viewed from the standpoint of the present time, than are the grants made by it to the South & North Co. Of this, however, when the contract, as in this case, furnishes no standard or measure for estimating the relative advantages, it would be extremely hazardous for the court to attempt a solution. Any conclusion we might reach would be the merest conjecture. We can not be presumed to know what prospective profit the construction and maintenance of the Highland & Belt Co. would be to the South & North Company. Nor can we know the value of the privilege of crossing the thirty-five feet strip whenever and wherever the South & North Co. might choose to do so, accompanied by the obligation of the Highland & Belt Co. to construct and maintain the crossings. These relative advantages might, and probably would vary with changing time.

In Waterman on Specific Performance, § 179, is this language: "Although inadequacy of consideration in contracts of sale, either in the price or property sold, may be a ground of defense, yet the facility of contracting and the free exercise of the judgment and will of the parties require that, as a general rule, they should be sole judges of the value of the benefits to be derived from their bargains. It is therefore manifestly just and expedient that mere inade-

quacy of consideration or value should not in itself be deem-
ed by the court a sufficient reason to refuse to specifically
enforce a contract, or a cause to set it aside. And such is now
the rule.  For courts of equity as well as courts of law, act
upon the ground that every person who is not from pe-
culiar condition and circumstances under disability, is enti-
tled to dispose of his property in such manner and upon
such terms as he chooses ; and whether his bargains are wise
and discreet, or profitable, or unprofitable, or otherwise, are
considerations not for courts of justice, but for the party
himself to deliberate upon.  The reason of this is to be
sought in the extreme difficulty of judging as to the feelings
and motives which may have actuated the parties, and the
corresponding variety of opinions which may be formed with
reference to the sufficiency of the consideration."  To this
the author cites many authorities.  And to the same effect
are the following authorities, which show it is the modern,
and, we may add, the more reasonable rule.—3 Pom. Eq. §
1405 and notes ; Fry on Spec. Performance, § 275, *et seq* ;
*Osgood v. Franklin*, 2 Johns. Ch. 1.

It is objected to the relief prayed in this case, that there
was a want of mutuality when the contract was made, in this
that while the South & North Co. bound itself to per-
mit the Highland & Belt Co. to construct its track on the
former's right-of-way, this was a mere unilateral permission,
and did not bind the Highland & Belt Co. to so construct
its track.  If this were the only purpose and provision of the
contract, the rule invoked would not apply.  When "the con-
tract is originally binding on the one and not on the other,
the latter may by suit waive that want of mutuality, and en-
force the specific performance of the contract."—Fry on
Specific Per. §§ 294, 297 ; Waterman on Spec. Per. § 200 ;
*Fallon v. Railroad Co.*, 1 Dill. Cir. Ct. 121 ; *Ala. Gr. So. R.
R. Co. v. S. & N. R. R. Co.*, 84 Ala. 570.

The contract, however, is not of the class mentioned.  Each
party bound itself to grant to the other a use of easement in
what had been the exclusive property and right of the party
granting.  Each right and interest granted became the con-
sideration for the right and benefit secured in return.  There
is nothing in the objection based on the alleged want of mu-
tuality.

. A graver question remains to be considered.  Is the con-
tract sought to have enforced in this case one that the Chan-
cery Court will order the specific execution of, or must re-
dress be sought in an action at law for damages?  It evi-
dently contemplates that it is to extend through a series of

[South & North Ala. R. R. Co. v. Highland Av. & Belt R. R. Co.]

years. Does it imply the performance of personal services, exercised with special skill, judgment and discretion? If so, the Chancery Court can not grant the relief prayed.— *Iron Age Pub. Co. v. W. U. T. Co.,* 83 Ala. 498 ; *Marble Company v. Ripley,* 10 Wall. 339 ; *Danforth v. Phila. & C. M. R'wy Co.,* 30 N. J. Eq. 12.

The case we have in hand does not present any of the difficulties that were encountered in the cases cited. The South & North Co. simply bound itself to permit the Highland & Belt Co. to construct and operate a track on a part of its right-of-way, and to make certain crossings ; and the Highland & Belt Co. bound itself to construct and maintain all the crossings which the exercise of the privilege granted might render necessary. In return for this, the Highland & Belt Co. bound itself to permit the South & North Co. to cross its thirty-five feet strip of land extending from Twenty-fourth to Eighteenth street, and to cross its track at other named places, "wherever and whenever" it might elect to exercise this privilege ; and it bound itself to construct and maintain the proper crossings, which might be rendered necessary if the South & North Co. exercised this granted privilege.

If the agreement had stopped here, possibly it would have left the Highland & Belt Co. under the contract obligation to personally construct and repair the necessary crossing—a service in its nature personal, "involving the exercise of personal skill, judgment and discretion," and of indefinite duration. So interpreted, the Chancery Court possibly would not and could not undertake to administer and specifically enforce such contract. But the agreement did not stop there. Its provisions are, that if the Highland & Belt Co., after thirty days' notice, failed to renew or repair such crossings, then the South & North Co. could do so at the cost and expense of the Highland & Belt Co. This, upon each recurrence, could only entail a money liability, and would not impose on the Chancery Court the duty of retaining the case for continuous administration. The rights, duties and liabilities of the parties being defined and settled by the decree of the court, all else would follow, as any other transaction *inter partes,* which is continuous in its nature. In what is declared above, we think we are fully sustained by the drift of modern authorities.

When a right-of-way is disturbed or withheld, damages may be recovered in an action at law. Hence, where easements or servitudes are annexed to private estates, "the due enjoyment of them will be protected against encroachment by in-

junction," notwithstanding an action at law could be maintained for the recovery of damages.—*Lide v. Hadley*, 36 Ala. 627, 635; 1 High on Injunctions, § 848; Washb. on Easements, 575.

In the case of *Sir Edward Bulwer Lytton v. The Gr. N. R'wy Co.*, 2 Kay & Johns. 394, it was held that where a railway company had agreed with a land owner, through whose estate the railway would pass, to construct and maintain a siding connected with their railway at B., together with all necessary approaches thereto for public use, for the reception and delivery of goods, "that specific performance could be decreed of the agreement to construct the siding and approaches without decreeing the company to maintain them when made,"

In *Sanderson v. C. & W. R'wy Co.*, 11 Beav. 497, a railway company being about to sever the plaintiff's land by their railroad, agreed to purchase the necessary portion of land "subject to the making such roads, ways and slips for cattle as might be necessary." *Held*, that although it was very difficult to execute an agreement thus expressed, yet the plaintiff was entitled to a specific performance; and that the word necessary must receive a reasonable interpretation.

In the great case of *Joy v. St. Louis*, 138 U. S. 1, the Wabash, St. L. & Pac. R'wy Co. had bound itself to permit the St. L., K. C. & C. R. R. Co. to use its right-of-way from the north line of Forest Park, through the park to the terminus of the Wabash Co.'s road in the city of St. Louis, for a fair and reasonable compensation. The question was whether the Chancery Court would specifically enforce this contract. It was ruled that the court had power to enforce the specific performance of the agreement by enjoining the appellants from preventing the Colorado company from using the right-of-way; and that a remedy at law would be wholly inadequate. Following this case as a precedent, it was said in *Un. Pac. R'wy Co. v. Chic., R. I. & P. R'wy Co.*, 51 Fed. Rep. 309, that the specific performance of a contract, whereby one railroad lets another into the joint use of its bridge and terminals, will not be refused because the acts to be performed are numerous and complicated, and are to extend through a long term of years.

In a note to *Conger v. N. Y., W. S. & B. R. Co.*, 43 Amer. & Eng. R. R. Co. 643, 651, is this expression, supported by many citations: "Specific performance will be decreed to enforce contracts of a permanent nature between railroad corporations, for running on and use of each others tracks, or of the track of one corporation by the trains of another."

[Cook v. The Rome Brick Co.]

See, also, *Chic., R. I. & P. R'wy Co. v. Un. Pac. R'y Co.*, 47 Fed. Rep. 15 ; 2 Chitty on Contracts, 11 Am. Ed. 1429 ; *Wilson v. The West. H. R'wy Co.*, 2 De Gex Ins. Rep. 475.

The foregoing principles and authorities are not at war with *McBryde v. Sayre*, 86 Ala. 458 ; *Iron Age Pub. Co. v. W. U. Tel. Co.*, 83 Ala. 489 ; *Elyton Land Co. v. S. & N. R. R. Co.*, 95 Ala. 631. Nor does it conflict, when properly applied, with *The W. C. Mf'g Co. v. The H. P. & E. R. R. Co.*, 23 Connett, 373 ; *Cooper v. Pena*, 21 Cal. 404 ; *Conger v. N. Y., W. S. & B. R. R. Co.*, 120 N. Y. 29 ; *Tex. & Pac. R'wy Co. v. Marshall*, 136 U. S. 393. See also Waterman on Specf. Perf. § 49.

The decretal order of the chancellor is Affirmed.