# Birmingham Belt Ry. Co. *v.* Lockwood.
## and
# Lockwood *v.* Birmingham Belt Ry. Co.

*Bill to Enjoin Trespass Upon Rights of Property.*

( Decided May 6, 1907.   43 So. Rep. 819.)

1. *Eminent Domain; Injury to Property; Right to Damage.*—Section 235 of the Constitution of 1901 places the right to compensation for injury to land by the construction or enlargement of the works, highways or improvement of a corporation on the same basis as the taking of land so that the same remedies and limitations applicable to the one apply to the other.
2. *Same; Damages.*—The measure of damages for the taking of or injury to land by the construction of a railroad is the diminution of the value of the property by reason of the construction or use which causes the damages.
3. *Same; Single Recovery.*—The right of action for the taking or injury of land by the construction of a railroad accrues but one time and that for all to recover the total damages.

[Birmingham Belt Ry. Co. v. Lockwood and Lockwood v. Birmingham Belt Ry. Co.]

4. *Same; Conveyance of Property; Effect.*—The right to damages for the taking or injury of land by the construction of a railroad accrues to the owner of the land at the time of taking or injury and does not pass by a conveyance of the property subsequently made.

5. *Same: Additional Servitude; Railroad in Street; Increase of Business.*—Where a railroad company was authorized to operate its line for the transportation of freight in a street adjoining plaintiff's property before plaintiff acquired the same, the mere increase of such business thereafter did not constitute an additional servitude, entitling complainant to relief.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Action by A. H. Lockwood against the Birmingham Belt Railroad Company. A judgment was rendered in favor of plaintiff, and both parties appeal. Reversed, and judgment dismissing the bill rendered.

CAMPBELL & JOHNSON, for appellant.—Damages for the taking and injury to land belong to the owner at the time of the injury and do not pass to a subsequent vendee.—*Evans v. S. & W. Ry. Co.,* 90 Ala. 54; *Roberts v. The N. P. R. R. Co.,* 158 U. S. 1; *King v. Southern Ry.,* 119 Fed. 1017; *S. N. R. R. Co. v. A. G. S. Ry. Co.,* 102 Ala. 236; Mills on Eminent Domain, § 66. The roadbed is a permanent structure.—*S. A. & N. Ry. Co. v. Buford,* 106 Ala. 313; *Bir. R. Co. v. Bir. R. & E. Co.,* 119 Ala. 121. Ordinarily, a railroad company is in adverse possession of its right-of-way, and may acquire title by adverse possession.—*M. & B. R. R. Co. v. Cogsbill,* 85 Ala. 456; s. c. 92 Ala. 252; *Bloch v. T. C. I. & R. R. Co.,* 93 Ala. 99; *Yancey v. C. & W. R. Co.,* 101 Ala. 264; *N. & C. Ry. Co. v. Watson,* 109 Ala. 382; *Bir. T. Co. v. Bir. Ry. & E. Co., supra.* The beginning of the running of the statute of limitations against the claim of the abutting owner for damages depends entirely upon the question as to whether the entire damages can be recovered in one suit and not upon whether possession of the railroad company is adverse or not.—*H. A. & B. R. R. Co. v. Matthews,* 99 Ala. 24; Lewison's

[Birmingham Belt Ry. Co. v. Lockwood and Lockwood v. Birmingham Belt Ry. Co.]

Eminent Domain (2nd Ed.) § 653-d, and cases cited therein, and authorities supra. Cars may be stopped in highways temporarily on tracks that are lawfully laid for the purposes of loading and unloading freight as well as passengers.—*Matthews v. Kelsey*, 58 Me. 56; Elliott on Streets, p. 871. The defendant is not an ordinary railroad but is a belt railroad.—*S. & N. R. R. Co. v. H. A. & B. R. R. Co.*, 117 Ala. 395.

HENRY UPSON SIMS, for appellee.—The chancellor did not err in holding all the pleas insufficient. For possession to be adverse it must be exclusive.—*Boulo v. N. O. M. & T. Ry.*, 55 Ala. 480; *Jesse-French Co. v. Forbes*, 129 Ala. 471. Occupant must claim to own the property occupied.—*H. A. & Ry. Co. v. Bir. U. Ry. Co.*, 93 Ala. 505. Twenty years are necessary for dedication. —*Steele v. Sullivan*, 70 Ala. 589; *Jesse-French Co. v. Forbes, supra.* Every entry would be a different cause of action.—*Battle v. Reid*, 68 Ala. 152. The court did not err in overruling the demurrer.—*Pate v. Henson*, 104 Ala. 599; *Whaley v. Wilson*, 112 Ala. 627. The bill avers that complainant owns to the center of avenue E, and if such is the case, the municipality cannot authorize a railroad company to enter upon the land in the street without paying complainant damages therefor.— *Perry v. Railroad Co.*, 55 Ala. 413; *Western Ry. of Ala. v. Ala. G. T. Ry.*, 96 Ala. 272; *N. & O. Ry. v. Karcher*, 112 Ala. 676; *M. & M. Ry. Co. v. Alabama Midland Ry. Co.*, 116 Ala. 61. The right of equity to relieve against a continued trespass is clear.—*Boulo v. N. O. M. & T. Ry. Co., supra; Bolling v. Crook*, 104 Ala. 130. The right to enjoin a continued nuisance is also clear.— *Farris v. Dudley*, 78 Ala. 124; *Whaley v. Wilson, supra.* Equity has a right to enjoin a continued injury although it could be sued for in an action in case.— *Bir. T. Co. v. Southern Bell T. & T. Co.*, 119 Ala. 144. If there is a public nuisance in the street, any individual who is especially interested has a standing in court to complain of it.—*Cabell v. Williams*, 127 Ala. 320; *Gogans v. Myrick*, 131 Ala. 286. Where a deed de-

scribes the lot as bounded by a street, the deed passes an interest to the center of the street subject to the public easement of passengers.—*C. & W. Ry. Co. v. Witherow, 82* Ala. 190; *Demopolis v. Webb,* 87 Ala. 659.

SIMPSON, J.—The bill was filed in this case by the appellee (complainant) against the appellant (defendant), setting up her title to a certain lot in Birmingham, claiming that complainant has the title to the middle of the street abutting said lot, referring to the various agreements and ordinances by which defendant and its predecessors obtained the right to lay tracks and operate cars on said street, which is called "Avenue E," and raising some questions as to the regularity of the organization of corporations and the transfer from one to the other. The bill then sets up as the gravamen of its complaint that the "use of Avenue E by said defendant is not a mere continuation of the method of user of the said street by its predecessors"; but, on the contrary, it has discontinued its passenger service, and has "enormously increased the number of freight cars carried across said property, and has greatly multiplied the switching and stops of its trains to allow the unloading of its freight and coal cars," thus using the avenue as "railway yards." The bill describes the annoyances from coal cars, etc., standing in front of her residence, unloading, etc., and prays that defendant make full reparation in damages, to be assessed by a jury, and that it be "perpetually enjoined from entering and trespassing upon the property and rights of enjoyment of your oratrix, * * * or of using said Avenue E in front of her property in the manner aforesaid." Without going into all of the details, we hold that the chancellor correctly decided that the complainant is the owner of the west half of block 172, in Birmingham; also that the "respondent is the lawful successor to the rights to operate said railroad as a freight railroad in said Avenue E which were conferred on the Highland Avenue & Belt Railroad & Improvement Company by act of the General Assembly of Alabama of

February 18, 1887." As to whether those rights are subject to the right of the complainant to compensation, present and prospective, depends upon certain facts which we proceed to inquire into.

It appears, from the exhibits to the answer and other evidence, that one Alberto Martin (from whom complainant deprives title), by indenture, conveyed the interest in the entire tract of land to the Elyton Land Company, and that company therein agreed to survey the land and lay off blocks, lots, and streets, and to divide the "blocks or squares, exclusive of the streets and alleys," so as to give said Martin "two blocks or squares" and said company one, which was done. On the 24th day of April, 1885, the mayor and aldermen of Birmingham, by indenture, for considerations therein mentioned, to be performed by the Elyton Land Company, its successors and assigns, granted the right of way over certain streets, including said Avenue E, "for the purpose of building, constructing, operating, and maintaining its said street car lines," and said Elyton Land Company agreed to build a double street car track on Avenue E, and to furnish the street car line with first-class equipment, to have cars running within six months, to be drawn by horses, mules, or steam locomotives, to be inclosed to resemble street cars. The road was put in operation, first drawing the cars by mules, and about June, 1886, it was converted into a dummy line, and operated for passengers. In September, 1886, application was made to the city authorities for a right of way "for the purpose of a street railroad, and a railroad to be used for transferring cars between the different railroads and the various important manufacturing industries of the city," which application was granted, and under it an additional track was laid on Avenue E, and these tracks were used interchangeably for the passenger service, for transferring cars between the various railroads and manufacturing enterprises, and for delivering cars loaded with coal and other articles to individuals along the line. It seems that this agreement was not signed, but was acted on

and the business thus continued until August 7, 1888, when an indenture between the Highland Avenue & Belt Railroad Company, as the successor and assignee of the Elyton Land Company, and the mayor and aldermen of Birmingham, reciting that, whereas, the road had been so built and operated under the previous unsigned agreement; and, "whereas, it was contemplated by said contract that for the purpose of transferring cars and freight between the various railroads and manufacturing establishments of the city of Birmingham, it should thereby grant to the Elyton Land Company or its assigns the right to construct a railroad upon and along Avenue E," and the party of the first part has built on said avenue a single railway "for its belt railroad," and has done certain street grading and paving which has been required: Now, in consideration of what said party had done and agreed to do, there was granted to it and its successors "the right of way for a double track upon and over Avenue E, * * * and for a single railroad track, being a track in addition to the Highland Avenue Railway track constructed and operated with its steam moter engines for passengers, upon and along Avenue E," etc. "* * * together with the right to lay all side tracks and turnouts that may be necessary for the purpose of building, constructing, maintaining, and operating its said railroad lines," etc. The first party agrees to keep and maintain locomotives and other rolling stock to carry on the business, etc., and, "if the party of the first part shall at any time undertake to carry passengers over the right of way herein granted, it shall provide first-class equipment," etc. In the meantime defendant had obtained a special charter from the Legislature for the "Highland Avenue & Belt Railroad & Improvement Company," which name was changed, in accordance with the power given in the charter to the "Highland Avenue & Belt Railroad Company," and said company acquired the property and rights of the previous companies. Heavier rails were laid, and the railroad was operated as a belt railroad, carrying cars from and to the railroads and indus-

tries, and delivering car loads of coal to individuals, and thus it continued both services, passing through a receivership, until the complainant came into the ownership of the property July 11, 1902, and since that time the passenger service has been discontinued, as there was another street car service a square from Avenue E.

The said act of the Legislature confers upon said new corporation therein organized general powers in regard to holding property, etc.; also the power "to purchase from the Elyton Land Company all of its railroad property and franchises, including the line known as the 'Highland Avenue Railroad,' and the line known as the 'Belt Railroad,' now in process of construction, and all rights of way, franchises, and privileges connected therewith, and such other property as may be convenient or necessary to carry out the purposes of its incorporation"; also authorizes it to "operate said railroads so purchased, and complete the same," to survey and locate "other lines in Jefferson and through any other counties, * * * and on such railroads and branches said company is authorized to take and carry for hire persons and property, by the power of steam' or other power; also to construct, equip, etc., street railroads in Birmingham, etc.—Acts 1886-87, p. 335. Whatever may have been the rights of the defendant, or its predecessors, under the first grant of a right of way for a street railroad, it is clear that by the subsequent grants its powers were enlarged, and additional tracks and heavier rails were put down for the express purpose of doing a freight business, and the act of the Legislature shows that the primary purpose was to do a freight business, leaving it to the option of the company to do a passenger business, also, if it so desired. It may be added that when the additional powers were conferred, under which the additional tracks were added and heavier rails were laid for the express purpose of doing a freight business, that was a new taking of the right of way, which entitled the then owner of the lot to compensation for such damages as would result to the land

by reason of the additional servitude, and such compensation could have been enforced, by injunction at any time before acquiescence operated as a bar.—*Thornton v. S. & B. R. R. Co.*, 84 Ala. 109, 114, 4 South. 197, 5 Am. St. Rep. 337; *Cowan v. Sou. Ry. Co.*, 118 Ala. 354, 360, 23 South. 754.

Under our Constitution, the right to compensation for "injury" to land by the "construction or enlargement of its works, highways, or improvements" by any corporation is placed upon the same basis as the taking of the land.—Const. 1901, § 235. Consequently the same remedies and the limitations thereto apply to the one as to the other. Without entering into the question of limitation or laches, the authorities are conclusive to the point that for the taking or injury of land by the construction of a railroad "the measure of damages is the diminution of the value of the property by reason of the construction or use which causes the damage;" second, "when the action accrues, it accrues once for all to recover the total damages," and the "right of action will be in the owner at the time the action accrued, and will not pass by conveyance of the property thereafter made, and the grantee in such conveyance will take subject to the right to continue this construction or use which causes the damage."—Lewin on Eminent Domain (2d Ed.) § 653b; Mills on Eminent Domain, § 66; *Haskell v. New Bedford*, 108 Mass. 208, 214; *McFadden v. Johnson*, 72 Pa. 335, 13 Am. Rep. 681; *Central R. R. v. Hetfield*, 29 N. J. Law, 206, 213, 216, 219; *Roberts v. N. Pac. R. R.*, 158 U. S. 1, 10, 15 Sup. Ct. 756, 39 L. Ed. 873; *N. Pac. R. R. v. Murray*, 87 Fed. 648, 651, 31 C. C. A. 183; *King v. So. Ry.*, (C. C.) 119 Fed. 1017; 3 Elliott on R. R., p. 1449, § 1000; *Evans v. S. & W. Ry.*, 90 Ala. 54, 60, 7 South. 758; *S. & N. R. R. v. A. G. S. R. R.*, 102 Ala. 236, 240, 14 South. 747.

The evidence is uncontroverted that the complainant did not acquire any interest in the land until 1902. This fact is fatal to the right of the complainant to any relief on account of any use which was authorized by any of the previous grants to the railroad company. We

think that the grants previous to the acquiring of any interest by the complainant clearly authorize the prosecution of the freight business by the railroad company, and that right carried with it the right to do as much freight business as it was capable of, so that the mere fact that its freight business increased could not amount to an additional servitude, and even if it was under obligation to continue also the passenger business, its failure to discharge that duty would not authorize an injunction against its legitimate freight business. But there is no claim in the bill that the complainant has been damaged by the cessation of the passenger business. It results that the chancellor erred in declaring that the complainant is entitled to compensation.

The decree of the court is reversed, and a decree will be here rendered dismissing the bill. The cross-appellant takes nothing by her cross-appeal.

Reversed and rendered.

Tyson, C. J., and Haralson, and Dowdell, JJ., concur.