## COMPENSATION FOR LAND APPROPRIATED FOR SIDEWALKS.

Hamilton County Court of Insolvency.

VILLAGE OF HYDE PARK v. FRANK B. DYER ET AL.

Decided, May, 1908.

*Eminent Domain—Appropriation of Strip for Sidewalk—Payment Long Delayed and Abutting Lots are in the Meantime Sold—Compensatation Claimed by the Grantees—But Treated as Having Vested in the Grantor.*

Where the right to compensation for land appropriated for sidewalk purposes has once vested, but payment therefor is long delayed, the claim therefor will be treated as personal in the original owner, and not as having passed with the lots, subsequently conveyed after the building of the sidewalk by deeds in which no reference was made to such claim.

WARNER, J.

This case has been submitted upon an application to distribute certain moneys paid into court in appropriation proceedings, to which moneys there are adverse claimants.

There was a verdict fixing the amount of compensation to be paid various owners, upon which judgment in due course was entered on the first day of June, 1900. confirming the verdict, and finding "that such lots and parcels of land, and the several interests therein, belonged to the persons whose names are set opposite to them herein, and that such persons are entitled to receive the proportion of said compensation as herein designated," and ordering the plaintiff corporation to pay into court the amount thereof for the use of the said owner.

Nothing further was done in the case until the 7th of May, 1901, when, by consent of all parties to the action, certain parties were dismissed from the case with their costs taxed and allowed; after which the decree proceeded as follows:

"And it further appearing to the court that the plaintiff, the village of Hyde Park, has elected to take lots Nos. 17, 18, 19,

20 and 22 as described in the application to assess compensation, and at the judgments hereinbefore entered and the owners of said lots have waived the right to the deposits of the respective judgments awarded to them against the plaintiff, a corporation, before said plaintiff corporation takes possession of their property, but in no way have waived their right to compensation for said property appropriated, it is ordered that the sheriff of Hamilton county, Ohio, put plaintiff corporation in possession of the lots described as Nos. 17, 18, 19, 20 and 22 in application to assess compensation; and it is further ordered that the judgment of $1,600 to James E. Mooney, trustee, as owner of lot No. 22, be and the same is hereby again confirmed.''

Similar confirmations of former judgments as to all remaining parties were included in the decree.

The lots so described consisted of ten feet in depth off the front of the platted lots on the west side of Edwards road, desired for street purposes. The village took possession of said ten feet and constructed a sidewalk thereon some time in or prior to 1902. From May, 1904, to April, 1907, said Mooney, trustee, sold sixteen lots abutting on said Edwards road and affected by said appropriation proceedings to various purchasers, and conveyed same by deeds of general warranty without reservation, and by a description giving the number of the lot and name of subdivision and plat book where same was recorded. Said money was paid into court in May, 1908. A part of said grantees from Mooney, trustee, and others, now holding title to certain of said lots through mesne conveyances, assert claims to a proportionate share of the $1,600. Mooney, trustee, claims the entire amount.

It is asserted by said grantees that the entry of May 7th, 1901, is a nullity except so far as it disposes of the matter of costs and attorneys' fees. If this were true it would be difficult to see how it would help their contention. It is manifest that under the terms of Section 2260, Revised Statutes, in force at that time, the village of Hyde Park at the expiration of six months from the entry of judgment on the verdict on the first of June, 1900, lost its strict legal right to the premises by virtue of said proceeding. Its ability to obtain the land, however, still existed,

and two ways were open for it to proceed: first, by another proceeding for the due appropriation of the property (*Trustees of Southern R. R.* v. *Haas*, 42 O. S., 239) ; second, by some appropriate agreement with the owners of the land.

The latter course seems to have been pursued, and by consent of all the parties interested the agreement was made subject of the entry of May 7th, 1901, of record in this case.

The court had jurisdiction of the subject-matter, and the order made was a valid and legal exercise of the judicial power vested in it. Without this order there would not have existed any basis of authority for the payment of the money into court for distribution. In legal effect this was a continuation of the appropriation proceedings, a waiving by the owners of the forfeiture of the village to take the property within the six months, and the consent on their part to accept the compensation assessed by the jury. *Ryan* v.*Hoffman*, 26 O. S., 120; *Toledo* v. *Groll*, 2 C. C., 199.

By the entry of June 1st, 1900, the court had found who were the owners of the land, that such owners were entitled to the compensation assessed, and ordered the payment thereof into court for their use. The entry of May 7, 1901, by consent of all parties confirmed this judgment and directed the delivery of the possession of the land by the sheriff. Possession was taken and sidewalk constructed about two years before Mooney, trustee, made any conveyances.

Upon these facts I am of the opinion that it was the intention of the parties that the title to said land should pass to the village to the extent permitted by law, and that such title did pass, upon possession being taken by said village.

I further think that said judgment entries and such delivery of possession gave to the then owners a vested right to the compensation fixed therein, and that said right did not pass by conveyances of the lots by said subsequent deeds.

Article I, Section 19, of the Constitution of Ohio does not require compensation to be first made to the owners of land taken for roads "that shall be open to the public without charge," as

was the case in this appropriation, and it was perfectly competent for the owners to accept a judgment in place of payment and to deliver possession of the property.

No Ohio case in point has been cited, and I have not found any that sustains the contention of said grantees. I have been referred to the following cases in this state:

In *Railroad Company* v. *Perkins*, 49 O. S., 333, Minshall, J., said in reply to an argument advanced, "Any grantee can maintain an action to recover lands wrongfully held against his grantor where the lands are included in his grant." But this was not the point at issue in that case.

In *Railroad Company* v. *Davis*, 19 C. C., 589, the circuit court of this judicial district decided that the conveyance of land occupied by a railroad company without consent entitles the grantee to all remedies against said company for such occupation, and that an action for damages by a former owner was improperly brought.

In *Weaver* v. *Toledo*, 3 C. C.—N. S., 319, lt was decided that a devisee of land could bring an action in her own name against a municipality to recover the amount assessed during the lifetime of the devisor in appropriation proceedings but never paid.

In *Clark* v. *Cleveland*, 9 C. C., 118, where the owner conveyed the land in fee simple after conditional judgment and before the expiration of the six months limitation in Section 2260, Revised Statutes, and the city took possession of the land without paying therefor, after the said six months had expired, it was held that the right of the vendor to recover the damages was ended, and that the right of action for damages accrued to the vendee. It is obvious that none of these cases reached the controversy in this case. In many other states it has been held that after the right to compensation in appropriation cases has once vested, it becomes a personal claim and does not pass with the land by a subsequent deed making no reference thereto. *Tenbroke* v. *Jahke*, 77 Pa. St., 392; *Appeal of Worrell*, 130 Pa. St., 600; *In re Ruebel*, 103 N. Y. Supp., 804; *R. R. Co.* v. *Engelhard*, 57 Neb., 444; *Smith* v. *R. R. Co.*, 88 Tenn., 611; *Walton* v. *R. R.*

*Co.,* 70 Wis., 414; *R. R. Co.* v. *Lockwood,* 43 So. Rep., 819; *Green* v. *R. R. Co.,* 112 Ga., 849; *Ft. Wayne Traction Co.* v. *R. R. Co.,* 80 N. E. Rep., 837 (68 Ark., 600); *Roberts* v. *R. R. Co.,* 158 U. S., 1.

In Illinois and Virginia the doctrine is announced substantially sustaining the position of the said ·grantees. The decided weight of authority, however, is with the contention of the former owners in this case. Upon principle also it would seem certain that the owners in giving possession of their property, without any reservation of lien or title, coupled with a retention only of the right to compensation already fixed and ordered paid into court for their use, had completely vested such compensation in them and severed it from the remaining land. Said deeds of general warranty vested in the grantees all the title the grantors had at that time to the land, as land, but no stretch of any legal principle could such deeds be held to convey vested rights to compensation for previously acquired interests therein actually in possession by virtue of this proceeding. The claim of the present owners is strictly technical and without great force, injustice or right. They bought the property after the ten foot strip was improved with a sidewalk, and without actual knowledge that this money had not been paid. It is true that their deeds called for the lots by the original plat as recorded, but they took them subject to the vested rights of the village therein, of which they must be conclusively presumed to have known, because of this proceeding in a court of record, and actual possession and use by the village at the time they bought.

Decree accordingly.