# Bellevue Cemetery Co. *v.* McEvers.

## *Bill to Enjoin A Nuisance.*

### (Decided July 6, 1910. 53 South. 272.)

1. *Equity; Bill; Multifariousness.*—A bill against a cemetery association which seeks to enjoin it from establishing a cemetery on certain land owned by the association on the theory that such cemetery, if established would constitute a nuisance, and also to restrain such association from closing an alleged highway constituting a part of the cemetery is not objectionable under section 3095, Code 1907, for multifariousness.

2. *Easements; User; Right of Road.*—Where a private road is used only by permission of the owner of the soil and such use was not adverse, no length of time would bar the right of the owner from closing it or preventing the public from using it at will.

3. *Highways; Nature of Use; Presumption.*—The use of a highway will be presumed to have been permissive where there is doubt or uncertainty as to the character and use of the same.

4. *Same; Closing; Bill to Enjoin.*—Where a bill is filed to enjoin the closing of an alleged highway, it should definitely allege whether the highway was a public or private one or show that it was a way of necessity in such a sense as to prevent the owner from closing it, and unless it does so it is demurrable.

5. *Nuisance; Establishment of Cemetery; Allegation.*—A bill filed by an adjoining property owner to restrain a cemetery association from maintaining a cemetery upon certain lands owned by the cemetery, which alleges that such lands was higher than complainant's lands, that a greater part of this was swampy and of quagmire nature, that complainant's land was of porous and gravelly nature, through which subterranean streams flowed from the cemetery land into complainant's well, and that the burial of dead bodies in the cemetery land would pollute such waters and render complainant's well unfit for use, and would constitute a nuisance, was not demurrable.

(Mayfield, Sayre and Evans, JJ., dissenting in part.)

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by C. F. McEvers against the Bellevue Cemetery Company to enjoin the establishment and maintenance of a cemetery, and to enjoin the closing of a highway. From a decree for complainant respondent appeals. Reversed and remanded.

BLACK & WHATLEY, and W. K. MARTIN, for appellant. A cemetery is not a nuisance per se.—*Kingsberry v. Fowler*, 65 Ala. 479. The court, therefore, erred in overruling respondent's demurrer to complainant's amended bill. The bill does not show that a cemetery in the locality of respondent's property is not a public necessity.—*Junythe v. Veraz*, 9 S. W. 244. There is also grave doubt as to whether as a matter of law there can be such an interest in subterranean streams that an injunction will be granted to prevent their pollution.—*Greencastle v. Hazlitt*, 23 Ind. 186; High on Injunction, sec. 801. As to this matter this case falls clearly within the principles set forth in *Rosser v. Randolph*, 7 Port. 238. The allegations of the bill cannot but leave the court in doubt as to the certainty of complainant's suffering irreparable injury, and the bill does not, therefore, contain equity.—Authorities supra; *Rouse, et al. v. Martin*, 75 Ala. 510; *St. James Church v. Arrington*, 36 Ala. 546; 11 S. W. 1125; 95 N. W. 646; 9 N. W. 848; 12 O. 392. The equity in complainant's bill with reference to the public road being closed is not shown by the allegations therein, and the demurrers thereto should have been sustained.—*Trump v. McDonald*, 120 Ala. 200; *Whaley v. Wilson*, 120 Ala. 502; 14 S. W. 466. The demurrers for multifariousness should have been sustained.—*Rives v. Walthall*, 38 Ala. 29; *Curran v. Armstead*, 101 Ala. 692; *Rapier v. Gulf C. P. Co.*, 69

[Bellevue Cemetery Co. v. McEvers.]

Ala. 482; *Goodwin v. Ross,* 63 Ala. 264; *Kennedy v. Kennedy,* 2 Ala. 609; *Adams v. Sayre,* 70 Ala. 318; *Bohlman v. Lobman,* 74 Ala. 510; *Corrugating Co. v. Thacker,* 87 Ala. 464; *Hall v. Henderson,* 114 Ala. 601.

BLEVINS & WOODALL, C. D. POWELL, and G. M. ED-MONDS, for appellee. The bill was not subject to the infirmities pointed out in the case of.—*Kingsberry v. Fowler,* 65 Ala. 479. The cemetery was located in violation of the statute and without a permit, and any citizen who was injured thereby may maintain a bill to prevent its use as such.—Sec. 726, Code 1907; *Bryan v. City of Birmingham,* 45 South. 922; *First Nat. Bank v. Tyson,* 144 Ala. 457; *Richards v. Dougherty,* 133 Ala. 569; *Whaley v. Wilson,* 112 Ala. 627; *Sloss-S. S. & I. Co. v. Johnson,* 41 South. 907; *Central I. & C. Co. v. Vander-heurck,* 41 South. 145. The bill is not multifarious.—Sec. 3095, Code 1907. *Boutwell v. Vandiver,* 123 Ala. 634; *C. C. Gro. Co. v. Kling,* 25 South. 629; *Singer v. Singer,* 51 South. 755; *Gulf C. Co. v. Jones C. Co.,* 47 South. 251. The road is a public road.—*Jones v. Barker,* 50 South. 890. The cemetery was unlawfully established.—Secs. 726, 1230 and 1284, Code 1907.

MAYFIELD, J.—Appellee filed his bill to enjoin appellant from establishing and maintaining a cemetery upon certain land owned and acquired by it for that purpose. The evident theory of the bill is that establishing and maintaining the cemetery under the conditions set forth in the bill would constitute a nuisance, which the court is asked to enjoin.

Among other things, it is alleged that the land in question, proposed to be devoted to the purpose of a cemetery, adjoins the lands and residence of complainant; that the land in question is higher than complain-

ant's land, and that a great part of it is of a "boggy,
swampy, and quagmire nature"; that complainant's
land is of a porous and gravelly nature; that subterrane-
an streams flow through respondent's land, and into the
well of complainant; that the burial of dead bodies on
respondent's land for these reasons would pollute these
subterranean streams which flow into complainant's
well, and render it unfit for use; that complainant's
lands and respondent's lands are now within the police
jurisdiction of the city of Greater Birmingham, though,
when acquired for their particular purpose, they were
within the corporate limits of the town of East Lake,
which was subsequently consolidated with and became
a part of Greater Birmingham. The pleadings show
that respondent acquired a permit from the municipal-
ity of East Lake to establish a cemetery upon the lands
in question, and that it was proceeding in accordance
with that permit.

It is also alleged in the bill that a certain road
known as the Bias Road traversed the land in question,
and intersected a public road some two miles distant;
that this Bias road had been worked from time to time
by the inhabitants of that locality for the convenience
of persons passing and repassing, and that it had been
so worked for more than 50 years; that said Bias road
is the only possible avenue of ingress to and egress
from orator's property; that respondent as a part of
its cemetery had fenced up a part of this road. The
bill was subsequently amended—evidently to meet some
of the objections pointed out to a similar bill in the
case of *Kingsbury v. Flowers,* 65 Ala. 479, 39 Am. Rep.
14, by Chief Justice Brickell. The amendment more
particularly described the character of the soil and the
topography of the complainant's and respondent's
lands, as well as the subterranean streams of water

thereunder; and alleged that it was a public burial place, rather than a private one, which respondent proposed to establish, and that complainant's only source of water supply was his well, which he feared would be contaminated by the burial of many dead bodies in the proposed cemetery.

The respondent interposed demurrers to the original, and to the amended bill. The chancellor overruled the demurrer to the amended bill; and from that decree this appeal is prosecuted.

The evident theories of the bill are two: One, to prevent a nuisance, by enjoining the use of the lands in question for a general cemetery; and the other to abate a nuisance by compelling the respondent to remove, from around the land in question, the fence which obstructs the road. While the parties and the subject-matter are the same, and the bill in one phase seeks to prevent a nuisance, and in the other to abate a nuisance from the same land, the nuisance and the rights of action to prevent the one and abate the other are entirely separate and distinct. The one will exist entirely separate and distinct from the other. If the cemetery will constitute a nuisance, it will be such with or without the fence. If the fence is a nuisance by obstructing a highway, it is such whether the land is used for a cemetery or not. The injuries suffered, or to be suffered, by the complainant, from the two wrongs, are entirely separate and distinct, and independent one from the other. One of the alleged nuisances may affect the public, and the other not. One may affect one part of the public, and the other another part. The bill does not seek "alternative or inconsistent reliefs," but it in one suit seeks two distinct, independent, and separate reliefs. The two wrongs complained of are not at all dependent one upon the other. The prevention of the one would

not abate the other; nor would the abatement of the latter prevent the creation or the existence of the former. Each is an entirely separate and distinct equity. Each phase or theory of the bill, if good, would support a suit in equity, without any reference to the other. The facts that both nuisances would be upon the same land, and both suits would be between the same parties, are merely incidents. The one in no way contributes to the other, and is not related to or connected with it except that it happens to be between the same parties as to the same land. The bill clearly presents two distinct causes of action; and, if so, it is multifarious, under all the authorities. A bill of this kind is not aided or cured by the statute. Section 3095 of the Code of 1907. The statute applies only when the bill seeks "alternative or inconsistent reliefs."

As before stated the two reliefs asked are not alternative, nor are they inconsistent; but they are separate and distinct. While the defect here pointed out—that is, the combining of two causes of action in one bill—is usually called multifariousness, it is as Mr. Daniel and Mr. Sims both observe more accurately, a misjoinder of causes. As pointed out by Mr. Sims in an apt quotation, "there is a rule arising out of the constant practice of the court that it is not competent where A. is sole plaintiff and B. is sole defendant for A. to unite in his bill against B. all sorts of matters wherein they may be mutually concerned. If such a mode of procedure were allowed, we should have A. filing a bill against B. praying to foreclose one mortgage, and in the same bill praying to redeem another, and asking many other kinds of relief with respect to many other subjects of complaint."—Sims' Ch. Pr. p. 143, § 232. The evils to flow from a construction of the statute which would allow the joining of several causes of ac-

tion in one bill have been anticipated by Mr. Sims in his valuable work above referred to.—See sections 255, 256. It has been said often that it is impossible to de-clare any fixed or abstract rule that will determine in all cases as to whether or not a bill is multifarious. The definition of Chief Justice Brickell (quoted by Mr. Sims, § 236), as follows, is probably as good as has been given: "It is said that multifariousness as an objec-tion to a bill is not capable of accurate definition. It is described generally as the joinder of distinct and inde-pendent matters, thereby confounding them, or the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill." The bill was therefore demurrable as for multifariousness, and, the demurrer having raised this question, it should have been sustained.

We will now consider each of the two causes of ac-tion presented by the bill, as we cannot know which complainant will eliminate by his amendment. The averments of the bill are insufficient to authorize the court to enjoin the use of the property in question as a cemetery. The bill shows no actual injury or detri-ment to complainant on account of such use; in fact, it does not attempt to do so, for the reason that the prop-erty has not yet been so used. The injury or detriment attempted to be alleged is wholly expectant and prob-lematical. Nothing but the gratuitous conclusions of the pleader shows that any injury or detriment to com-plainant will necessarily result from the use of the land in question for the purpose of a cemetery. It is very true that the injury contemplated or expected may happen, if the facts alleged are true (and on demurrer they must be so treated); but this is not enough to

warrant a court in enjoining a party from a use of his property, which is proper and lawful, if such injury does not happen. Before granting such an injunction, the court will require it to be made certain that the contemplated act of the respondent sought to be enjoined is wrongful, and that it will certainly injure complainant, and not only that it will injure him, but also that it will work irreparable injury or loss to him. An adequate remedy at law is enough to prevent the issuing of an injunction. It is settled law in respect to private nuisances that equity will not interfere where the nuisance is only apprehended, or is dubious or contingent; that in such cases it will leave complainant to his remedy at law.—*Ellison v. Commissioners*, 58 N. C. 58, 75 Am. Dec. 431. Manly, J., in the above case, spoke as follows: "A consideration of the subject-matter of this complaint, as disclosed by the pleadings, leads us to the conclusion that a place of interment of the dead is not necessarily a nuisance, but that this must depend upon the position and extent of the grounds, and especially upon the manner in which the burials are affected. The cemeteries which have been established near the principal cities and towns of our country (and which it is the commendable purpose of the Washington corporation to imitate) have sprung from the idea that open space, free ventilation, and careful sepulture, not only prevent such places from becoming nuisances, but make them attractive and agreeable places of resort. The dead must be disposed of in some way, and burial in the earth, suggested by the conceived revelation of man's origin and destiny, is that most generally resorted to. The commissioners of the town of Washington have selected a spot outside of the town in obedience to the act of assembly and the vote of the citizens, and, so far as we can perceive, it is fitting and appropriate for that

purpose. If the grounds be arranged and drained, and the burial of the dead be conducted as elsewhere in such establishments, we incline decidedly to the opinion it will not be a nuisance, either public or private. The word 'nuisance' is, of course, used here in its legal sense, and is confined to such matters of annoyance as the law recognizes and gives a remedy for. The unpleasant reflections suggested by having before one's eyes constantly recurring memorials of death is not one of these nuisances. Mankind would, by no means, agree upon a point of that sort, but many would insist that suggestions thus occasioned would in the end be of salutary influence. The deathhead is kept in the cell of the anchorite, perpetually before his eyes as a needful and salutary monitor. The nuisance which the law takes cognizance of is such matter as, admitting it to exist, all men, having ordinary senses and instincts, will decide to be injurious."

It is well-settled law that percolating filthy matter from the premises of a party who suffers it through the soil and upon the premises of an adjacent owner, to the injury of the latter, is an actionable nuisance. But in all decided cases of this kind the exclusion of such filth was practicable by a proper use of the premises; and in all such cases the injury must be positive and substantial, and such as fairly imposes upon the party causing it the duty of restraint. The movements of subsurface waters are so obscure that the rights of contiguous owners of land through which such waters flow cannot be well defined or preserved. Judge Cooley, in speaking of such waters, says: "They do not often have a well-defined channel, and it is not easy in many cases to determine in what direction their movements tend. If corrupted at one point, the effect may be confined within very narrow limits, while at another,

[Bellevue Cemetery Co. v. McEvers.]

though no surface indications would lead one to expect it, the taint might follow the water for miles. In some cases a new well at a considerable distance from an old one may withdraw the water from the other and destroy it, while in other cases, in which the same result would seem more likely, there is no perceptible influence. It is in view of these difficulties that the rule of law has become established that owners of the soil have no rights in subsurface waters not running in well-defined channels, as against their neighbors who may withdraw them by wells or other excavations. * * * But, if withdrawing the water from one's well by an excavation on adjoining lands will give no right of action, it is difficult to understand how corrupting its waters by a proper use of the adjoining premises can be actionable when there is no actual intent to injure, and no negligence. The one act destroys the well, and the other does no more. The injury is the same in kind and degree in the two cases. If the complainant may lawfully demand the relief he prays for in this case, we do not see why the same relief may not be demandable in a great variety of cases where the private grounds of individuals in such little hamlets are being used for the most common and necessary purposes. A privy vault, for example, will probably corrupt the subsurface water to a greater extent than several graves; and, if the one may not exist in the vicinity of private dwellings, neither may the other. And, if a burial ground is an actionable nuisance to a person living within 20 or 30 rods, under the facts as they are presented in this case, it may be an actionable nuisance under other circumstances to one living a mile away. What would be necessary to support the action would be to trace by the application of chemical tests to the subsurface waters the corrupting influence of the grave for

that distance."—*Upjohn v. Richland Township*, 46 Mich. 549, 550, 9 N. W. 848, 41 Am. Rep. 178. The above language is applicable to the case made by this bill as to the contamination of the waters.

The Supreme Court of Illinois, writing to a case very much like this, said: "There are some things which in their nature are nuisances, and which the law recognizes as such. There are others which may or may not be so, their character in this respect depending on circumstances. Now, the town of Lake View is a rural township, containing about 11 sections or square miles of territory. It is therefore impossible to hold that a cemetery anywhere within the limits of the town must be necessarily a nuisance, and can be prohibited in advance as such. A cemetery may be so placed as to be injurious to the public health, and therefore a nuisance. It may, on the other hand, be so located and arranged, so planted with trees and flowering shrubs, intersected with drives and walks, and decorated with monumental marbles, as to be not less beautiful than a public landscape garden, and as free from all reasonable objection. The power to prohibit the establishment of cemeteries except by the authority of the trustees cannot be considered as falling within the power to abate and remove nuisances."

As to the other cause of action set forth in the bill—obstructing a highway—the amended bill is indefinite and uncertain. It does not clearly appear whether the road obstructed is a public or a private one. While it is alleged that it has been used as a way for more than 50 years, it is not certain whether this user was adverse or was permissive. If it was a private road, and was used only by permission of the owners of the soil, and such use was not adverse, no length of time would bar the right of the owner to close it up or to prevent

the public at will from using it. The presumption, in cases of doubt and uncertainty as to the character of the user of such ways, is that it is permissive.—*Trump v. McDonnell*, 120 Ala. 204, 24 South. 353. Nor is the allegation sufficient to show that the road is a way of necessity, in such sense as to enjoin the owner of the land from closing it up, if the use was permissive. Id. If the bill can be maintained on this theory, it must be amended in this respect in order to withstand an appropriate demurrer.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON, MCCLELLAN, SAYRE, and EVANS, JJ., are of the opinion that the demurrers as to multifariousness were not well taken, and were properly overruled.

DOWDELL, C. J., and ANDERSON and MCCLELLAN, JJ., and the writer, are of the opinion that the demurrers addressed to that part of the bill as to the obstruction of the highway were well taken, and should have been sustained; and for this reason alone the case is reversed.

The CHIEF JUSTICE and MCCLELLAN, SAYRE and EVANS, JJ., are of the opinion that the demurrers addressed to that part of the bill which seeks to establish a cemetery were not well taken and were properly overruled. ANDERSON, J., concurs with the writer as to this feature of the bill.