**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY and American Telephone and Telegraph Company, Appellants,**

v.

**SOUTHERN PRECISION PATTERN WORKS, Inc., Appellee.**

**No. 16460.**

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1958.

Rehearing Denied Feb. 25, 1958.

James A. Simpson, Reid B. Barnes, Birmingham, Ala. (Lange, Simpson, Robinson & Somerville, Birmingham, Ala., Joseph Higgins, Cincinnati, Ohio, John A. Boykin, Jr., Harvey L. Cosper, Walter R. Byars, Atlanta, Ga., of counsel), for appellants.

W. H. Sadler, Jr., Harold F. Herring, Birmingham, Ala. (Sadler & Sadler, Birmingham, Ala of counsel), for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

The controlling issue is whether the appellants have acquired over the land of the appellee a right of way, easement or other property interest entitled to protection. The appeal is from a final judgment for the defendant, appellee, in an action for a declaration of rights and for an injunction brought by the appellants as plaintiffs. The findings of fact by the district court are not attacked, and in pertinent part are quoted in the margin.[1]

1. "For many years prior to 1929, Sloss-Sheffield Steel & Iron Company (now United States Pipe and Foundry Company) was the owner of a triangular tract of land consisting of approximately three acres near Irondale, Alabama. In that year, there were some conversations between the plaintiff Southern Bell and the Sloss Company as to the installation of a conduit and cable along the public road that runs along the northern and eastern sides of this property. In a letter dated March 25, 1929, written by a Mr. Harris on behalf of the latter company to the attention of Mr. Powell of the former company, it was stated that

" 'Sloss-Sheffield Steel & Iron Company is willing for you to install the same (conduit and cable) in the public road as it now exists, and in the event the public road should be moved or the road abandoned, the Telephone Company would be required to remove the conduit from the roadway above mentioned.'

"In the Sloss Company file is a blueprint showing the proposed route of the installation at the place indicated. The conduit was not located at that place, but instead was installed across the Sloss Company property. At that time there was a right of way for a street railway across this property. (This right of way was by conveyance dated November 15, 1912, from the Sloss Company to the Birmingham Railway Light and Power Company. This conveyance contained a reverter upon abandonment of use. The right of way was abandoned in 1935.) Plaintiffs' initial installation, which was made in 1929, was on an arc following the general course of this right of way. The evidence does not establish that this installation was on this right of way. One cable was installed in the conduit at that time, and since that date, down to and including 1953, four additional cables have been installed therein. There is room for one other cable. This space is being reserved for use in an emergency. Plaintiffs own two of the cables jointly. The remaining cables are owned by Southern Bell Telephone and Telegraph Company.

"There is no record of the grant of an easement to the plaintiffs. The evidence wholly fails to establish by what authority the plaintiffs have been and are now occupying the premises. Both Mr. Powell and Mr. Harris are deceased.

"That part of the conduit which crosses the defendant's property is 681 feet long and is equipped with three manholes exposed to the surface which furnish access to the conduit and cables. At each end of the conduit and located on the property is a post with a sign attached which gives warning of the presence of the cables. There is evidence that these posts and signs have been on the property since 1953. Through the years there have been quite a bit of weeds and undergrowth on this property. At one time a small corner of the property was occupied by a filling station. This was removed several years ago. The evidence fails to show that the Sloss Company, or its successor in title, had actual knowledge of the existence of the conduit and posts until shortly before the sale of the property to the defendant.

"The negotiations between the United States Pipe and Foundry Company and the defendant for the sale began around the 1st of September, 1956. At that time there was no discussion as to the existence of the plaintiffs' facilities on the property. Between the date of the oral contract of sale and the actual closing of the sale, one of the defendant's officers, who was handling the negotiations, called the seller's attention to the presence of these facilities on the property. The sales price of $11,000.00 was not altered; however, the deed did recite that the grant was subject to the following:

A right of way, easement or other property interest is claimed by the appellants over the appellees' tract of land under either of two principles, thus stated in appellants' brief:

"(a) By twenty-year prescriptive right under the law of Alabama, and

"(b) as a taking by a public utility vested with the power of eminent domain under the doctrine of Roberts v. Northern Pacific Railroad Co., 158 U.S. 1 [15 S.Ct. 756], 39 L.Ed. 873, and Birmingham Belt Railroad Co. v. Lockwood, 150 Ala. 610, 43 So. 819."

1. In support of the claimed twenty-year prescriptive right, the appellants invoke the Alabama doctrine of prescription or repose whereby title to real property may be acquired by virtue of possession for twenty years without recognition of adversary rights or admission of liability, and rely upon the following decisions: Kidd v. Borum, 181 Ala. 144, 61 So. 100; Walker v. Coley, 264 Ala. 492, 88 So.2d 868; Stearnes v. Woodall, 218 Ala. 128, 130, 117 So. 643, 644; Oxford v. Estes, 229 Ala. 606, 611, 158 So. 534.

The appellee points out that each of those cases involved possession of and title to a parcel of land itself rather than an easement thereon, and that as to private easements [2] the rule is different and is well established that,

" * * * a private easement is not established merely by use of the lands of another for twenty years, or more, but such use must have been adverse to the owner of the premises over which the easement is claimed under claim of right, exclusive, continuous and uninterrupted, with actual or presumptive knowledge of the owner." Roberts v. Monroe, 261 Ala. 569, 75 So.2d 492, 499.

See, also, West v. West, 252 Ala. 296, 40 So.2d 873; Sellers v. Valenzuela, 249 Ala. 627, 32 So.2d 517; Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559; Hill v. Wing, 193 Ala. 312, 69 So.

---

" '1. Such easements as may exist over, upon or across said land for railroads, public roads, electric transmission lines, telephone lines, telegraph lines, pipe lines and other existing easements.
* * *
" '3. Such rights, if any, as Southern Bell Telephone & Telegraph Company and American Telephone & Telegraph Company may have to maintain and operate buried telephone cables under and across said land.'

"Following the purchase, and over plaintiffs' objections, the defendant began the construction of building. One of the manholes and 145 feet of the conduit are under this proposed building. The southern one-half of the building has been excavated for a basement. The defendant proposes to lay concrete floor over the northern one-half. The manhole is located approximately on the northern boundary of the basement. The defendant's building engineer has drawn plans which, it is claimed, will protect the conduit from damage at the points where the footings cross same, and will furnish access to the manhole from the basement and thence through a door to the exterior of a building.

"The conduit here involved carries plaintiffs' long lines and television cable to Atlanta and beyond, their long lines to Chattanooga and beyond, and wires for local service in the neighborhood of Irondale. Plaintiffs claim that the proposed construction will interfere with their access to their facilities and will otherwise damage same."

2. It is not disputed that the claimed easement is private, as clearly appears from the principle stated in Elyton Land Co. v. South & North Alabama R. Co., 95 Ala. 631, 10 So. 270, 271: " * * * the land held by a railroad company for the purposes of its enterprise, whether acquired by condemnation proceedings or by purchase from the owners, is, so far as the right of property is concerned, private property. The incidents of private ownership attach to it. The title is in no manner vested in the public or in any part of the public as such. The title of the railroad company is as exclusive as that of any sole grantee in a conveyance of land. It must use the property for the public purposes for which it was acquired under public authority. Though the property must be so used, still the ownership is private, and the public do not share in such ownership." See, also 28 C.J.S. Easements § 3(e).

**540**

445; Stewart v. White, 128 Ala. 202, 30 So. 526, 55 L.R.A. 211; Bellview Cemetery Co. v. McEvers, 168 Ala. 535, 53 So. 272; Jesse French Piano & Organ Co. v. Forbes, 129 Ala. 471, 29 So. 683.

The appellants concede that the cases upon which they rely are cases dealing with "area" occupancy, but point out that the cases relied upon by appellee deal with private alleys and private ways of access, and insist that the instant case involves "area" occupancy because, "Obviously, no one else could occupy the space occupied by Appellants' manhole structures and their connecting conduit."

■ The distinction which appellants seek to draw seems to be open to the Alabama Supreme Court under the facts of the cases which have been decided, but thus far no such distinction has been recognized in that Court's opinions which are couched in general terms referring to a "private easement," or even expressly to "a right of way or other easement" as in Drummond v. Franck, 252 Ala. 474, 41 So.2d 268, 272.[3] Further, the Alabama Supreme Court has shown that the rule in Alabama as to the establishment of a private easement differs from that recognized by the majority of American courts, and requires that, "To create such an easement, there must be evidence that the use was adverse to the owner." West v. West, 252 Ala. 296, 40 So.2d 873, 874, 875.[4]

The opinion in that case refers to an annotation in 170 A.L.R. 770, and that annotation, beginning on page 794, contains an interesting account of the development of the law in Alabama, and emphasizes particularly that in Jesse French Piano & Organ Co. v. Forbes, 129 Ala. 471, 29 So. 683, "the crossing of the property line by the swinging of the blinds was relied on."

■ It seems to us that appellants' argument would have the tail wag the dog, for, clearly, the "area" occupation of the land by appellants' manholes and connecting conduit could not ripen into a fee title but was a mere incident to the claimed easement. If the easement were abandoned no one would contend that appellants retained title to the "area" occupied.

It is more reasonable, we think, to consider appellants' "area" occupancy simply as one of the circumstances of notoriety from which knowledge of the owner might be presumed.

"The foundation of the establishment of a right by prescription is the acquiescence on the part of the owner of the servient tenement in the acts which are relied upon to establish the easement by prescription. This makes it necessary that he know of those acts, or be charged with knowledge of them if he did not in fact know of them. So, the use necessary to acquire an easement by prescription must be with the knowledge or imputed knowledge of the owner."

17A Am.Jur., Easements, § 84, pp. 699, 700. See, also, Drummond v. Franck, supra; 28 C.J.S. Easements § 12.

That circumstance is entitled to little or no weight in establishing a right of way across this unimproved tract of land. See Trump v. McDonnell, 120 Ala. 200, 24 So. 353; Annotation, 170 A.L.R. 820. The conduit was buried, only the tops of the manholes projected above the surface and those were concealed by the weeds and undergrowth on the property. The district court found that, "The evidence fails to show that the Sloss Company, or its successor in title, had actual knowledge of the existence of the conduit and posts until shortly before the sale of the

---

3. "Where a right of way or other easement is claimed by a private person or persons by prescription, the use and enjoyment must have been adverse to the owner of the estate upon which the easement is claimed under a claim of right, exclusive, continuous and uninterrupted,

and with the active and presumptive knowledge of such owner." Drummond v. Franck, 252 Ala. 474, 41 So.2d 268, 272.

4. See, also, 17A Am.Jur., Easements, § 73; 28 C.J.S. Easements § 68.

property to the defendant." It found further:

"There is here no evidence that plaintiffs' user was adverse to the ownership of defendant's grantor. The presence of the facilities, if it be conceded that such grantor had actual knowledge thereof for more than 20 years, is not inconsistent with a presumptive [5] user."

Clearly, we think, appellants failed to establish title to an easement across appellee's property under the Alabama doctrine of prescription or repose.

2. We come then to the appellants' alternative claim under the doctrine of Roberts v. Northern Pacific Railroad Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873, and Birmingham Belt Railroad Co. v. Lockwood, 150 Ala. 610, 43 So. 819.

■■ As to the exercise of the power of eminent domain by a corporate public utility where no federal constitutional question is presented, state law must of course control; though actually we find nothing contrary to the law of Alabama in the federal case of Roberts v. Northern Pacific Railroad Co., supra, when considered in connection with later federal cases, e. g. Northern Pacific R. Co. v. Smith, 171 U.S. 260, 271, 18 S.Ct. 794, 43 L.Ed. 157; City of New York v. Pine, 185 U.S. 93, 100, 22 S.Ct. 592, 46 L.Ed. 820; Kindred v. Union Pacific R. Co., 225 U.S. 582, 596, 597, 32 S.Ct. 780, 56 L.Ed. 1216; Town of Essex v. New England Telegraph Co., 239 U.S. 313, 321, 36 S.Ct. 102, 60 L.Ed. 301; Lacy v. United States, 5 Cir., 1954, 216 F.2d 223, 225. None of those cases establishes the doctrine contended for by the appellants that, once a utility is in possession of property which it could expropriate by eminent domain, it has acquired a property interest and cannot be ejected.[6] Under their facts, each of those cases was clearly based upon an estoppel against an owner who knew that the utility had entered upon his land and permitted the utility, without objection to expend large sums in work upon the property.

Alabama likewise recognizes that the owner's acquiescence may "estop him from ousting the railroad company by ejectment if the latter is then willing to make just compensation." Tombigbee Valley R. Co. v. Loper, 184 Ala. 343, 63 So. 1006. See, also, Southern Ry. Co. v. Hood, 126 Ala. 312, 28 So. 662. That estoppel is the basis of the rule was expressly stated in Patterson v. Atlantic Coast Line R. Co., 204 Ala. 453, 86 So. 20:

"It is a well-recognized principle that in order to subject the property of another for public use under the doctrine of eminent domain, the proceedings must be as prescribed by our Constitution and statutes, yet we also have a well-established rule that, while a railroad company has no right to enter upon and take the lands of another without his consent or without condemnation proceedings and just compensation for same, if it does enter and construct its track upon the land of another, and the owner has knowledge that the company is proceeding to locate and construct its road on his land, and he allows it to spend large sums of money on improvements for such purpose, he will be estopped from ousting the company by ejectment, if the company is willing to then make just compensation, such as its taking may involve. This rule is, of course, founded upon an equitable estoppel; and, while it protects the railroad from being ousted it does not estop the owner from claiming a just compensation, or relieve the railroad from the payment of same as a condition precedent of enjoining the ouster at law." 86 So. at pages 20–21.

Quoted with approval in Alabama Great Southern R. Co. v. Brown, 215 Ala. 533, 112 So. 131, 132, and in Montgomery v.

---

5. "Permissive" was probably intended.

6. As holding to the contrary, see the cases collected in 30 C.J.S. Eminent Domain §§ 397 and 412.

Alabama Power Co., 250 Ala. 441, 34 So.2d 573, 574, 575.

Birmingham Belt Railroad Co. v. Lockwood, supra, is not to the contrary, and holds no more than that, when there has been an actual taking and an accrual of a cause of action, it will not pass by conveyance of the property thereafter made. The distinction is that, in the instant case, the claimed "taking" was without the knowledge, express or imputed, of the owner. It had in no way acquiesced in that taking and was not bound to recognize it. To support appellants' contention would, in our opinion, be in conflict with the clear and explicit requirements of the State Constitution that the utility pay just compensation to the owner before taking his property, Alabama Constitution of 1901, §§ 23 and 235, and with the detailed provisions of the statutes implementing those constitutional provisions, Code of Alabama 1940, Title 19, § 1 et seq.

■ We have thought it necessary to express our opinion to the effect that appellants have established no property right or title as a basis for our judgment that the appellee has not infringed upon any such right. Actually, the decision need not be so broad. Appellee has not sought to withdraw permission for the maintenance of appellants' manholes and connecting conduit and lines so far as consistent with the structure built over a part thereof by the appellee.[7] There being no controversy to that extent, the district court simply entered judgment "in favor of the defendant," without an explicit declaration of rights. In the absence of a cross-appeal, we should not enlarge the rights of the appellee nor lessen the rights of the appellants under the judgment appealed from. Arkansas Fuel Oil Co. v. Leisk, 5 Cir., 1943, 133

F.2d 79, 81. Our judgment is therefore limited to a simple affirmance of the judgment of the district court.

Affirmed.

### On Petition for Rehearing

PER CURIAM.

In Stanley v. Barclay, 1950, 253 Ala. 650, 46 So.2d 210, urged by appellants on petition for rehearing, the evidence affirmatively showed that for more than twenty years Pearl Barclay

"* * * and her predecessors in title have been in the continuous, open, notorious, hostile, adverse possession of the driveway claiming it as their own against all others. We think that not only does the evidence show such claim and right on the part of appellee but also shows that the predecessors in title of appellants conceded such claim and right." 46 So.2d at page 212.

Lot 35, including the drive on the north of the lot was conveyed to D. E. Barclay on November 12, 1925, more than twenty years before appellants on January 15, 1948 received their deed to Lot 36 still further north. The Alabama Supreme Court found that:

"The evidence appears to show that at no time since D. E. Barclay became seized and possessed of the driveway has anyone been privileged to use the driveway except by permission or for a consideration."

Stanley v. Barclay, supra, 46 So.2d at page 212.

We find nothing in what was said or held in Stanley v. Barclay, supra, that conflicts with our original opinion and decision. The petition for rehearing is denied.

---

**7.** As found by the district court:

"The defendant has made no attempt or threat to remove plaintiffs' facilities. On the contrary, defendant's building has been projected and is being constructed with full recognition of the presence of these facilities, and with plans for the protection of same from damage. Plaintiffs' complaint is grounded primarily on the assumption that their access to these facilities, in the event of the necessity for repairs or for extension of same, will be hampered, and that the hazard and cost of making such repairs and extension will be increased."